## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-cv-21121-BLOOM

ANNETTE BARNES, *individually and*
*on behalf of all others similarly situated*,                    **CLASS ACTION**

      Plaintiff,                                             **JURY TRIAL DEMANDED**

v.

ALLSUP EMPLOYMENT SERVICES, LLC,

      Defendant.

_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**[1]

---

[1] To avoid violating the one-way intervention rule, Plaintiff respectfully requests for this Court to enter an order on class certification before ruling on Plaintiff's Motion for Summary Judgment. *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252 (11th Cir. 2003) (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)) ("'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'").

Plaintiff Annette Barnes, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, moves for summary judgment with respect to her and the Class members'[2] claims against Defendant Allsup Employment Services, LLC ("AES"), under the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA"), and states:

## I.    INTRODUCTION

"Telemarketing calls are [] intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records." *Krakauer v. Dish Network, LLC,* 925 F.3d 643, 649 (4th Cir. 2019). "Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991." *Id*. "The TCPA can be enforced by federal agencies, state attorneys general, and private citizens." *Id*. at 649. The "private cause of action is a straightforward provision designed to achieve a straightforward result….Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 650. The TCPA was enacted not only "to compensate each private injury…but also to address and deter the overall public harm caused by such conduct." *City Select Auto Sales, Inc. v. David Randall Assocs.*, 296 F.R.D. 299, 310 (D.N.J. 2013) (quoting *Texas v. Am. Blast Fax, Inc.*, 121 F. Supp. 2d 1085, 1090 (W.D. Tex. 2000)).

To prevail on her TCPA, Plaintiff need only prove that AES called her and the Class members using an artificial or prerecorded voice. *See Schaevitz v. Braman Hyundai, Inc.*, No. 1:17-cv-23890-KMM, 2019 U.S. Dist. LEXIS 48906, at *14 (S.D. Fla. Mar. 25, 2019) (Moore, J.) (quoting *Manfred v. Bennett Law, PLLC*, No. 12-cv-61548, 2012 U.S. Dist. LEXIS 173935, at *6

---

[2] "Class members" means the individuals falling within the "Class" and "Subclass" definitions outlined in Plaintiff's Motion for Class Certification.

(S.D. Fla. Dec. 7, 2012) (Seitz, J.)). The facts of this case are simple: AES, a government contractor, abused its grant of authority for its own financial gain. AES called Plaintiff and the Class members with prerecorded voice messages that advertised and were for the purpose of promoting its parent, Allsup, LLC, and its affiliated entities. It did so without the requisite "express written consent" needed for such marketing calls, and in violation of the directives it received from the United States Social Security Administration ("SSA") and was thus acting outside the scope of any purported authority that had been granted to it.

In opposing this Motion, AES will attempt to disclaim its marketing activities. But AES cannot avoid (1) that the prerecorded calls it placed to Plaintiff and the Class members promoted Allsup, LLC on their face; (2) the evidence showing that AES actively cross-markets Allsup, LLC and its affiliated entities; and (3) that Allsup, LLC and its affiliated entities benefited financially from AES's marketing activities. At best for AES, the issue of whether it was engaged in violative telemarketing should be decided by a jury. Accordingly, this Court should grant summary judgment in favor of Plaintiff and the Class members to compensate them for their injuries and deter future abuses by other government contractors, and leave any remaining disputed facts to be decided by a jury, not based on AES's self-serving narrative.

## II.  UNDISPUTED MATERIAL FACTS

### A.  AES's Background and Business Model



. SOF ¶4.

. SOF ¶37.

. SOF ¶56. A "beneficiary" is an individual who has been awarded SSDI benefits. SOF ¶1.

██████████████████████████████████████████. SOF ¶72. ███████

█████████████████████████████████████████████████████

██████████████████████████████████████████ SOF ¶5. Ticket
to Work is an SSA program meant to assist SSDI recipients with getting back to work and,
eventually, off of benefits. SOF ¶2.

█████████████████████████████████████████████████████

██████████████████████████. SOF ¶3. ███████████████████

███████████████████████████████. SOF ¶7. ██████████████

██████████████████████████████████████████████████. SOF
¶8. █████████████████████████████████████████████████

█████████████████. SOF ¶9.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████. SOF ¶29. ███████

████████████████████████████████████████. SOF ¶36.

**B. AES's Corporate Culture: "**████████████████████████**"**

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████. SOF ¶38. ███████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████. SOF ¶¶39, 44.

█████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████. SOF ¶40. ████████████████

███████████████████████████████████████████

██████



SOF ¶41 (emphasis supplied). ████████████████████████

████████████████████. SOF ¶44. ████████████████████

███████████████████████████████████████████

██████████████████████████████ SOF ¶45 (emphasis supplied). █

███████████████████████████████████████████

██████████ SOF ¶43.

**C. AES's Corporate Culture in Action**

**1. *AES Ignores the SSA's Do-Not-Call Requirements***

███████████████████████████████████████

███████████, SOF ¶43, ██████████████████████

██████████████████████████████████. SOF ¶31. ████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████ SOF ¶30 (emphasis original).

███████████████████████████████████████

4



SOF ¶46 (emphasis supplied).

### 2. *AES Ignored the SSA's Repeated Warnings That It Needed to Comply With the TCPA and FCC's Regulations*

The SSA provided an "EN Marketing Business Process" document to all ENs, including

AES, outlining the policies that ENs need to follow to participate in the Ticket to Work program.

SOF ¶18. In those materials, the SSA explicitly warned AES that those who

> use autodialing or texting as a mode of beneficiary contact under the marketing program *are responsible for ensuring compliance with Federal Communications Commission -- F.C.C. regulations, and other legal requirements regarding calling or texting cell phones and landlines*. We urge you to consult your legal counsel regarding any legal questions you have pertaining to F.C.C. rules and your organization's participation in the marketing business process.

SOF ¶24 (emphasis supplied). ███████████████████████████████████

████████████████████████████. SOF ¶25.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████ SOF ¶52.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

SOF ¶74. ████████████████████████████████████████████

████████████████████████████. SOF ¶75.

**D.** **AES Markets Allsup, LLC and its Affiliates**

████████████████████████████████████████████████

████████. SOF ¶12. ████████████████████████████

██████████████████████████████. SOF ¶14. ████████████

████████████████████████████████████████████████

██████████████████. SOF ¶17. ████████████████████

████████████████████████████████████████████████

████████████████████████. SOF ¶15.

████████████████████████████████████████████

██████████████████████████████████████. SOF ¶58. ██████████

████████████████████████████████████████████████

██████████████████████████████. SOF ¶59. ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████. SOF ¶¶49, 71.

████████████████████████████████████████████

████████████████████████████████████████████████. SOF ¶19.

████████████████████████████████████████████████

████████████████████████████████████████████████

6





SOF ¶¶60, 61.

. Winiarski Dep. at 61:25-62:5;

Ratermann Dep. at 54:16-55:6.

SOF ¶76 (emphasis supplied).

. SOF ¶82 ("

.").

**E. AES's "** **" Telemarketing to Plaintiff and the Class Members**

SOF ¶66.

. SOF ¶32.

. SOF ¶20.

. SOF ¶67.



███████ SOF ¶65. ████████████████████████████████████████████

███████████████████████████████ . SOF ¶77. █████████████████████

████████ ███ █████████ ██████████ ██████ █████████ ██████ █████ █

███████████████████████████████████████████████████████████████

██████████████████████████.[3] SOF ¶78. █████████████████████████

███████████████████████████. SOF ¶79. ██████████████████████████

███████████████████████████████████████████████████████████████

███████. SOF ¶80. ███████████████████████████████████████████████

███████. SOF ¶81. ████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████. SOF ¶33. █████████████████

███████████████████████████████████████████████████████████████.

SOF ¶34. █████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████. SOF ¶35.

### III.   LEGAL STANDARD

Summary judgment "shall be granted, if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

---

[3] ███████████████████████████████████████████████████████████████
█████ SOF ¶69. ██████████████████████████████████████████████████
███████████████████████ . SOF ¶68. ███████████████████████████████
███████████████████████████████████████████████. SOF ¶70.

of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999).  A genuine issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When faced with a "properly supported motion for summary judgment," the nonmoving party "must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997).  The "non-moving party must do more than present a 'scintilla' of evidence in its favor.  Rather, the non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence, for the non-movant." *Sylvia Dev. Corp. v. Calvert County Md.,* 48 F. 3d 810, 818 (4th Cir. 1995) (*quoting Anderson*, 477 U.S. at 252).

## IV.   ARGUMENT

The TCPA prohibits: (1) any person from calling a telephone number; (2) using a prerecorded message; (3) without the recipient's prior express consent. 47 U.S.C. §227(b)(1). Pursuant to the rules and regulations promulgated by the Federal Communications Commission ("FCC"), "prior express **written** consent" is required for calls that introduce or contain any type of marketing.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1838 ¶20 (Feb. 15, 2012) (emphasis supplied); 47 C.F.R. § 64.1200(a). It is undisputed that: (1) AES called Plaintiff and the Class members; (2) using prerecorded voice messages; (3) in part to advertise and promote Allsup, LLC and its affiliates; (4) without Plaintiff's and the Class members' prior express written consent. Moreover, AES's affirmative defenses do not present a barrier to summary judgment in favor of Plaintiff and the Class members.

**A. <u>AES Called Plaintiff and Class Members With Prerecorded Voice Messages</u>**.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████. SOF ¶33. ███████████████████████████████

██████████████████. SOF ¶80. ██████████████████████████

████████████████████████████. SOF ¶81.

Further, the TCPA does not require that "the recipient of a call . . . answer the phone or somehow be aware of the call." *Schaevitz*, 2019 U.S. Dist. LEXIS 48906, at *14 (quoting *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV-JORDON, 2010 U.S. Dist. LEXIS 112780, at *8 (S.D. Fla. Oct. 19, 2010)). "Rather, 'it is the mere act of placing the call that triggers the statute.'" *Id*. In other words, a "violation of the TCPA occurs at the moment the [calls] were allegedly sent." *Mohamed v. Off Lease Only, Inc.*, 320 F.R.D. 301, 312 (S.D. Fla. 2017); *see also Hinman v. M & M Rental Ctr., Inc.*, 596 F.Supp.2d 1152, 1159 (N.D. Ill. 2009) (reading a "receipt" requirement into the TCPA "imports elements that neither Congress, nor the FCC, nor any soundly reasoned authority has stated are part of a TCPA claim."); *see also Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13-1347-JCC, 2015 U.S. Dist. LEXIS 22108, at *12 (W.D. Wash. Feb. 24, 2015) ("The TCPA was intended to 'apply to the persons *initiating* the telephone call or sending the message[.]'") (*quoting Couser v. Pre-paid Legal Services, Inc.*, 994 F.Supp.2d 1100, 1104 (S.D. Cal. 2014) (emphasis in the original) (citing S.Rep. No. 102-178 (1991), 1991 WL 211220 at *9)).

AES's anticipated arguments to the contrary are "nothing more than an attempt to dismember the TCPA, converting a simple remedial scheme into a fact-intensive quarrel over how long a party was on the line or how irritated it felt when the phone rang. Obviously, Congress could have created such a cumbersome scheme if it wanted to. It instead opted for a more

straightforward and manageable way of protecting personal privacy[.]" *Krakauer*, 925 F.3d at 654. This Court should therefore enter summary judgment on this first element of Plaintiff's and the Class members' TCPA claim.

**B.  AES's Calls Were in Part to Market Allsup, LLC and its Affiliates**

Under the TCPA and its implementing regulations, telemarketing is defined as "the initiation of a telephone call or message ***for the purpose*** of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person". 47 C.F.R. § 64.1200(f)(13) (emphasis added). Here, the evidence that demonstrates that all of the calls were telemarketing because of the dual-purpose AES had of promoting Allsup, LLC and its affiliates' services. Indeed, the undisputed facts show that (1) ███████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████, SOF ¶¶57, 83-85; (2) ████████████████████████ ████████████████████████, SOF ¶76; (3) ████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████ SOF ¶¶60, 61; (4) ████████████████████████████████ ████████████████████████, SOF ¶11; and (5) █████████████████████████ ███████████████████████████████████████████████ SOF ¶82

AES will contend that its calls were meant to provide information about the Ticket to Work Program, ignoring that calls "that are purely informational on their face may still violate the TCPA because they could ultimately be used to advertise other products or services at cost." *Fiorarancio v. WellCare Health Plans, Inc.*, Civil Action No. 21-14614 (SRC), 2022 U.S. Dist. LEXIS 5297, at *8 (D.N.J. Jan. 11, 2022) (citing *Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F. Supp. 3d 9, 12-13 (D.D.C. 2015) (explaining that messages that promote a free good

or service "are often part of an overall marketing campaign") (quoting In re Rules & Regs. Implementing the Tel. Consumer Protection Act of 1991 Junk Prevention Act of 2005, 21 FCC Rcd. 3787, 3814 (2006))). This is known as the "dual purpose" rule, which prohibits utilizing "informational" calls as a pretext for advertising.

"[U]nder the 'dual purpose' rule, a message may also constitute telemarketing where it is ultimately leads to the promotion of goods or services, even if the text may be otherwise benign." *Mittelmark v. Yoga Joint S., LLC,* No. 18-62138-CIV-DIMITROULEAS, 2018 U.S. Dist. LEXIS 211620, at *8 (S.D. Fla. Dec. 14, 2018) (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2003 FCC Order"), 18 FCC Rcd. 14014, ¶ 142 (2003)). In 2003, the FCC issued guidance concerning "dual purpose" calls, stating:

> If the call is intended to offer property, goods, or services for sale either during the call, ***or in the future*** (such as in response to a message that provides a toll-free number), that call is an advertisement.

2003 Order at ¶ 142 (emphasis added); *see also In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Report and Order, 27 FCC Rcd. 15391, at ¶ 12 (Nov. 29, 2012) ("texts that encourage consumers to call or otherwise contact the sender in an attempt to market, including such texts that, ***while neutral on their face***, lead to a marketing message if the consumer contacts the sender, are likely beyond the scope of the consumer's prior consent.") (emphasis added).

Consistent with this guidance, the Ninth Circuit has held that "the FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited." *Chesbro v. Best Buy Stores, LP,* 705 F.3d 913, 917 (9th Cir. 2012) (citing 2003 FCC Order at ¶¶ 140-142); *see also* 2003 FCC Order at ¶ 141 ("[The FCC] agree['s that] application of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message."). Further, the Ninth Circuit

13

explained that in applying the dual-purpose rule, courts must focus "not on the caller's characterization of the call, but on the purpose of the message." *Chesbro,* 705 F.3d at 918. It elaborated that courts should approach the analysis "with a measure of common sense," keeping in mind that "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context," and that "[a]ny additional information provided in the calls does not inoculate them." *Id.*; *see also Chinitz v. NRT West, Inc*, No. 18-cv-06100-NC, 2019 U.S. Dist. LEXIS 27134, at *6 (N.D. Cal. Feb. 20, 2019) ("[47 C.F.R. § 64.1200(a)(2)] makes clear that the TCPA reaches prerecorded messages that do not constitute advertisements or telemarketing themselves."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) (rejecting the defendants' argument that it should "consider only the content of the calls in determining whether they were 'telemarketing.'") (citing *Alleman v. Yellowbook, Inc.*, No. 12-CV-1300-DRH-PMF, 2013 U.S. Dist. LEXIS 127212 (S.D. Ill. Sept. 6, 2013)); *Golan*, 788 F.3d at 820 ("[n]either the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'") (citing *Chesbro*, 705 F.3d at 918); *Flores v. Access Ins. Co.*, No. 2:15-cv-02883-CAS(AGRx), 2017 U.S. Dist. LEXIS 36486, at *21 (C.D. Cal. Mar. 13, 2017) ("That is, the communications had both informational and telemarketing purposes because plaintiff was informed about the status of his policy and was encouraged to purchase services from defendant."); *Moore v. Pro Custom Solar LLC*, No. 21 C 4395, 2022 U.S. Dist. LEXIS 67347, at *7 (N.D. Ill. Apr. 12, 2022) ("It is the purpose behind a call, not what happens during the call, that governs for TCPA analysis of solicitation.").

In rejecting AES's likely argument, the court in *Bennett v. GoDaddy.com LLC* explained that "[t]he relevant question is Defendant's ***purpose*** in initiating the calls, not what occurred on

each call. Of course, it is often easiest to determine the purpose of a call by looking at a call's contents. But contents are not the only way." No. CV-16-03908-PHX-ROS, 2019 U.S. Dist. LEXIS 59766, at *21 (D. Ariz. Mar. 15, 2019) (emphasis in original). The court explained that "Defendant's repeated insistence that the Court must look to the content of each call to determine whether each call was 'telemarketing' is simply incorrect." *Id.* at *22-23.

That AES was not very successful in its marketing does not immunize its calls because the "telemarketing" definition under the TCPA depends on the "purpose" of the calls—not the results obtained. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd 14014, 223 (F.C.C. June 26, 2003) ("The TCPA's definition does not require a sale to be made during the call in order for the message to be considered an advertisement.").

In *Braver v. NorthStar Alarm Servs., LLC*, the court explained, in the context of ratification of a vendor's calls violating the TCPA:

> Most importantly, it is undisputed that Yodel's leads resulted in roughly 150 new NorthStar customers. NorthStar argues that the telemarketing campaign was a "colossal failure," which the court assumes, for present purposes, to be true. But that does not change the fact that NorthStar, with knowledge of Yodel's material acts, accepted the benefits of calls placed by Yodel in violation of the TCPA.

No. CIV-17-0383-F, 2019 U.S. Dist. LEXIS 118080, at *32 (W.D. Okla. July 16, 2019) (footnotes omitted).

AES has nothing to rebut the above cited evidence and, therefore, cannot meet its burden to show that a jury could find by a preponderance of the evidence that it was not engaged in marketing Allsup, LLC and its affiliates. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At best for AES, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. Accordingly, if this Court is not inclined to rule in favor of Plaintiff on this issue, it should allow

a jury to weigh the evidence and AES's and its employees' testimony.

**C.   AES did not Have Express Written Consent from Plaintiff or the Class Members**.

Since AES was engaged in dual purpose marketing, it was required, but failed to, secure express written consent from Plaintiff and the Class members before placing calls with a prerecorded voice. "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Keim v. ADF MidAtlantic, Ltd. Liab. Co.*, 328 F.R.D. 668, 681 (S.D. Fla. 2018) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)).  Effective October 16, 2013, a "call that includes or introduces an advertisement or constitutes telemarketing" requires the "the prior express **written** consent of the called party."  47 C.F.R. §64.1200(a)(2) (emphasis supplied).

"[P]rior express written consent" is defined as follows:

(8) The term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

(i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

*Snyder v. Icard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2016 U.S. Dist. LEXIS 191212, at *11-*12 (S.D. Fla. May 16, 2016) (quoting 47 C.F.R. §64.1200(f)(8)).  "Thus, under binding FCC regulations, 'prior express written consent' can be obtained only after providing the recipient with

the required disclosures that they agree to receive automated telephone advertisements and that agreeing to receive such calls is not required to make a purchase." *Snyder*, 2016 U.S. Dist. LEXIS 191212, at *13 (quoting *In re Rules & Regs. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 8015 (July 10, 2015)). "Simply obtaining some form of written express consent is insufficient to obtain the consent required by law to send automated text message advertisements." *Snyder*, 2016 U.S. Dist. LEXIS 191212, at *13.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████. SOF ¶¶34, 35.

### D. **AES's Affirmative Defenses do not Prevent the Entry of Summary Judgment**

#### 1. *AES is a Person Covered Under the TCPA.*

As its first affirmative defense, AES claims that it is not a "person" under the TCPA because "the TCPA does not include 'the federal government or [its] agents acting within the scope of their agency under common-law principles of agency.'" Answer, [DE 8], at 15-16 (quoting *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, CG Docket No. 02-278, 31 F.C.C. Rcd. 7394, 7398 (2016)). However, AES omits the FCC's complete rule on the issue: "except when a call made by a contractor does not comply with the government's instructions." *In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991*, 31 F.C.C. Rcd. 7394, 7394 (July 5, 2016).

In the case at hand, it is undisputed that AES did not comply with the SSA's instructions when placing prerecorded calls to Plaintiff and the Class members. ████████████████

████████████████████████████████████. SOF ¶31.

Contrary to this SSA requirement, ████████████████████████████████

███████████████████████████████████████████████████████ SOF ¶30

(emphasis original). ████████████████████████████████████████

██████████████████████s, SOF ¶¶ 24, 52, 74, ████████████████e, SOF ¶¶25,

75, ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████. Third, as discussed at length, ██████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████ SOF ¶26,

and nothing else. ████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████, SOF ¶27, ████████████

██████████████████████████████████████████████████, SOF ¶21.

Having failed to comply with several of the government's instructions, AES cannot now claim that it is excepted from liability under the TCPA. If AES had followed the SSA's instructions and limited its conduct to promoting the Ticket to Work program, it might have an argument. But AES did more, it seized on an opportunity to advance its and parent's financial interests, believing that it could act as it pleased and would face no repercussions. AES was mistaken.

### 2.   *AES is not Entitled to Sovereign Immunity.*

As its second affirmative defenses, AES contends that it is entitled to derivative sovereign immunity as a government contractor. Answer at 16-18. However, the Supreme Court has rejected this defense. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016) ("Do federal

contractors share the Government's unqualified immunity from liability and litigation? We hold

they do not....Campbell asserts 'derivative sovereign immunity,' Brief for Petitioner 35, but can

offer no authority for the notion that private persons performing Government work acquire the

Government's embracive immunity."); *see also Adkisson v. Jacobs Eng'g Grp.*, No. 3:13-CV-505-

TAV-HBG, 2017 U.S. Dist. LEXIS 231967 (E.D. Tenn. Feb. 15, 2017) ("In *Campbell-Ewald*, the

Supreme Court addressed a circumstance where the federal government enjoyed absolute

immunity to the claims under the TCPA....The Court determined that Campbell-Ewald did not

obtain derivative absolute immunity by virtue of his status as a government contractor....Rather,

the Court found that the contractor may obtain qualified immunity as limited by the principles set

forth in *Yearsley* and *Filarsky*.").

Pursuant to *Campbell-Ewald*, AES's only available argument is that it is entitled to

qualified immunity. However, "[q]ualified immunity may be overcome . . .if the defendant knew

or should have known that his conduct violated a right 'clearly established' at the time of the

episode in suit." *Campbell-Ewald*, 577 U.S. at 167 (quoting *Filarsky v. Delia*, 566 U.S. 377, 394

(2012) (Ginsburg, J., concurring) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here,

AES cannot "contend that the TCPA's requirements or the [SSA's] instructions failed to qualify

as 'clearly established.'" *Campbell-Ewald*, 577 U.S. at 168. Indeed, the TCPA and its

implementing regulations clearly establish that express written consent is required for

telemarketing calls using prerecorded messages. ████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████. SOF ¶¶ 24, 26, 52, 74.

### 3.   *AES did not Have the Requisite Consent*.

As discussed at length above, AES failed to secure the requisite express written consent

before placing prerecorded calls to Plaintiff and the Class members that advertised Allsup, LLC. Just because it was more costly for AES to use live callers or secure consent is not an excuse as was recently observed by Judge Ruiz in a case involving similar claims under Florida's mini-TCPA. *See Turizo v. Subway Franchisee Advert. Fund Tr. Ltd.*, No. 21-CIV-61493-RAR, 2022 U.S. Dist. LEXIS 89622, at *26 (S.D. Fla. May 18, 2022) ("Defendant has at least two options: employ human means to select and dial telephone numbers, or to obtain consent from the called parties before using an autodialer to contact them. Conveniently enough, these two options are also congressionally approved ways to avoid liability under the TCPA's autodialer provision. *See* 47 U.S.C. § 227(b)(1). That Defendant might have to incur more costs or less efficient telemarketing practices, *see* Mot. at 19, does not render the FTSA unconstitutional.").

### 4. *AES has no Factual Support for its Equitable Estoppel Defense.*

As its fourth and final affirmative defense, AES asserts equitable estoppel, contending that Plaintiff and the Class members "induced" AES to call them by providing their telephone numbers to the SSA. This defense warrants little discussion given the facts outlined above, absence of any evidence demonstrating that Plaintiff or the Class members invited AES's prerecorded calls, ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████. SOF ¶35. Therefore, AES has no factual support of its claim that Plaintiff and the Class member "induced" AES to call them.

**WHEREFORE**, Plaintiff Annette Barnes, on behalf herself and the Class members, respectfully requests the entry of summary judgment against AES in the amount of $500 per call, and for such other relief as deem appropriate by the Court.

Date: June 8, 2022

Respectfully submitted,

| **IJH LAW** | **HIRALDO P.A.** |
|---|---|
| Ignacio J. Hiraldo, Esq. | |
| Florida Bar No. 0056031 | /s/ *Manuel S.  Hiraldo* |
| 1200 Brickell Ave Suite 1950 | Manuel S. Hiraldo |
| Miami, FL 33131 | Florida Bar No. 030380 |
| Email: ijhiraldo@ijhlaw.com | 401 E. Las Olas Boulevard Suite 1400 |
| Telephone: 786.496.4469 | Ft. Lauderdale, Florida 33301 |
| *Counsel for Plaintiff* | Email: mhiraldo@hiraldolaw.com |
| | Telephone: 954-400-4713 |
| | *Counsel for Plaintiff* |