# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| **ANNETTE BARNES**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ALLSUP EMPLOYMENT SERVICES, LLC**,<br><br>Defendant. | No. 21-CV-21121-BLOOM/Otazo-Reyes<br><br>Honorable Beth Bloom |

## DEFENDANT ALLSUP EMPLOYMENT SERVICES, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dated: June 22, 2022

By: /s/ *Nadia Abramson*
Richard C. Godfrey, P.C. (*pro hac vice*)
Andrew B. Bloomer, P.C. (*pro hac vice*)
R. Allan Pixton (*pro hac vice*)
Kelsey Bleiweiss (*pro hac vice*)
Nadia Abramson (FL Bar No. 121763)
KIRKLAND & ELLIS LLP
300 North LaSalle St.
Chicago, IL 60654-3406
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: richard.godfrey@kirkland.com
        andrew.bloomer@kirkland.com
        allan.pixton@kirkland.com
        kelsey.bleiweiss@kirkland.com
        nadia.abramson@kirkland.com

Buffey E. Klein
Florida Bar No. 0034639
HUSCH BLACKWELL LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 999-6100
Facsimile: (214) 999-6170
Email: buffey.klein@huschblackwell.com

Scott J. Helfand (*pro hac vice*)
HUSCH BLACKWELL LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Telephone: (312) 655-1500
Facsimile: (312) 655-1501
Email: scott.helfand@huschblackwell.com

*Attorneys for Defendant*
*Allsup Employment Services, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

**INTRODUCTION**............................................................................................................ **1**

**BACKGROUND** ............................................................................................................... **2**

     A.    Plaintiff Expressly Agreed To Be Contacted By The SSA And Its
Contractor AES Regarding The Ticket To Work Program. ................................... 2

     B.    AES Called Plaintiff About The Ticket To Work Program At SSA's
Direction. ............................................................................................................. 3

**ARGUMENT AND AUTHORITIES** ............................................................................. **3**

**I.**     **PLAINTIFF EXPRESSLY CONSENTED AND AGREED TO BEING
CONTACTED BY THE SSA AND AES.** ....................................................... **4**

**II.**    **AES'S PRERECORDED MESSAGES DID NOT—AND UNDER
FEDERAL LAW COULD NOT—TELEMARKET OR ADVERTISE
UNDER THE TCPA.** ...................................................................................... **5**

     A.    AES's Messages Were Not Telemarketing Or An Advertisement. ....................... 5

     B.    Plaintiff's "Dual Purpose Marketing" Argument Fails.......................................... 10

     C.    Plaintiff's Cases Are Inapposite............................................................................ 15

**III.**   **PLAINTIFF FAILS TO SHOW ALLEGED CLASS MEMBERS HAVE
STANDING TO RECOVER DAMAGES UNDER THE TCPA.** ................... **16**

**IV.**   **AS THE SSA'S CONTRACTOR AUTHORIZED TO SEND
PRERECORDED MESSAGES, AES IS IMMUNE FROM LIABILITY
UNDER THE TCPA.** .................................................................................... **17**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In the Matter of Acurian, Inc. Petition for Declaratory Ruling Rules & Reguls.*
   *Implementing the Tel. Consumer Prot. Act of 1991*,
   2021 WL 228010 (FCC Jan. 15, 2021) ............................................................. 6, 8, 9

*Alleman v. Yellowbook*,
   2013 WL 4782217 (S.D. Ill. Sept. 6, 2013) ...................................................... 10

*Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc.*,
   2006 WL 1766812 (W.D. Mo. June 23, 2006) .................................................. 7

*Basham v. Midland Funding, LLC*,
   2022 WL 1125500 (E.D. Mo. April 15, 2022) .................................................. 3

*Bennett v. GoDaddy.com LLC*,
   2019 WL 1552911 (D. Ariz. April 8, 2019) ...................................................... 15

*Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*,
   713 F.2d 618 (11th Cir. 1983) .......................................................................... 11

*BPP v. CaremarkPCS Health, L.L.C.*,
   2021 WL 5195785 (E.D. Mo. Nov. 9, 2021) .................................................... 9, 12

*Broking v. Green Brook Buick GMG Suzuki*,
   2017 WL 3610490 (D.N.J. Aug. 22, 2017) ...................................................... 12

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) .......................................................................................... 17, 18

*Cavero v. Franklin Collection Serv. Inc.*,
   2012 WL 279448 (S.D. Fla. Jan. 31, 2012) ...................................................... 5

*Cavey v. MarketPro Homebuyers, LLC*,
   542 F. Supp. 3d 418 (E.D. Va. 2021),
   *appeal dismissed*, 2021 WL 6689144 (4th Cir. Oct. 12, 2021) ......................... 16

*Chesbro v. Best Buy Stores, LP*,
   705 F.3d 913 (9th Cir. 2012) ............................................................................ 15

*Chinitz v. NRT West, Inc.*,
   2019 WL 720996 (N.D. Cal. Feb. 20, 2019) .................................................... 15

*Cooper v. Meridian Yachts, Ltd.*,
  575 F.3d 1151 (11th Cir. 2009) ........................................................................11

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) .....................................................................1, 16

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
  888 F.3d 640 (4th Cir. 2018) ...........................................................................17

*Daniel v. Five Stars Loyalty, Inc.*,
  2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ...................................................12

*Dennis v. Amerigroup Washington, Inc.*,
  2020 WL 618472 (W. D. Wash. Feb. 10, 2020).............................................8, 12

*Dolemba v. Ill. Farmers Ins. Co.*,
  2015 WL 4727331 (N.D. Ill. Aug. 10, 2015) ......................................................9

*Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*,
  106 F.Supp.3d 9(D.D.C. 2015) ........................................................................15

*Edelsberg v. Vroom, Inc.*,
  2018 WL 1509135 (S.D. Fla. Mar. 27, 2018)................................................ *passim*

*In re Egidi*,
  571 F.3d 1156 (11th Cir. 2009) ..........................................................................4

*Fiorarancio v. WellCare Health Plans, Inc.*,
  2022 WL 111062 (D.N.J. Jan. 11, 2022)............................................................15

*Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*,
  858 F.3d 1362 (11th Cir. 2017) ...................................................................6, 7, 9

*Flores v. Access Ins. Co.*,
  2017 WL 986516 (C.D. Cal. March 13, 2017) ...................................................15

*Friedman v. Torchmark Corp.*,
  2013 WL 1629084 (S.D. Cal. Apr. 16, 2013).......................................................9

*Gerrard v. Acara Sols., Inc.*,
  469 F. Supp. 3d 96 (W.D.N.Y. 2020) ..................................................................9

*Golan v. Veritas Entm't, LLC*,
  788 F.3d 814 (8th Cir. 2015) ............................................................................15

*Grigorian v. FCA US LLC*,
  838 F. App'x 390 (11th Cir. 2020) ....................................................................16

*Matter of GroupMe, Inc./Skype Commc'ns*
  *S.A.R.L Petition for Expedited Declaratory Ruling*
  *Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,
  29 FCC Rcd. 3442 (2014) ........................................................................................5

*Harrington v. Roundpoint Mort. Servicing Corp.*,
  2017 WL 1378539 (M.D. Fla. April 11, 2017).........................................................5

*Harrington v. RoundPoint Mortgage Serv'g Corp.*,
  2017 WL 1331072 (M.D. Fla. April 11, 2017).......................................................18

*Hinman v. M&M Rental Ctr., Inc.*,
  596 F. Supp.2d 1152 (N.D. Ill. 2009) ....................................................................17

*Jance v. Homerun Offer LLC*,
  2021 WL 3270318 (D. Ariz. July 30, 2021) ...........................................................12

*Johnson v. Cap. One Servs., LLC*,
  2019 WL 5190788 (S.D. Fla. Oct. 15, 2019)..........................................................18

*Krakauer v. Dish Network, L.L.C.*,
  925 F.3d 643 (4th Cir. 2019) .................................................................................16

*Lawrence v. Bayview Loan Servicing, LLC*,
  666 F. App'x 875 (11th Cir. 2016) ......................................................................4, 5

*Lucoff v. Navient Sols., LLC*,
  981 F.3d 1299 (11th Cir. 2020) ...............................................................................4

*Lutz App. Servs., Inc. v. Curry*,
  859 F. Supp. 180 (E.D. Pa. 1994) .........................................................................10

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ...........................................................................4, 5

*Mittelmark v. Yoga Joint S., LLC*,
  2018 U.S. Dist. LEXIS 211620 (S.D. Fla. Dec. 14, 2018) ....................................15

*Mohamed v. Am. Motor Co., LLC*,
  320 F.R.D. 308 (S.D. Fla. 2019)............................................................................17

*Moore v. Pro Custom Solar LLC*,
  2022 WL 1092186 (N.D. Ill. April 12, 2022).........................................................15

*Murphy v. DCI Biologicals Orlando*,
  797 F.3d 1302 ......................................................................................................4, 5

iv

*Murray v. Birmingham Bd. of Educ.*,
  172 F.Supp.3d 1225 (N.D. Ala. 2016) ...................................................................18

*N.B. Indus., Inc. v. Wells Fargo & Co.*,
  465 F. App'x 640 (9th Cir. 2012) .......................................................................6, 7

*Phillip Long Dang, D.C., P.C. v. XLHealth Corp.*,
  2011 WL 553826 (N.D. Ga. Feb. 7, 2011) .............................................................10

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*,
  2013 WL 486207 (D.N.J. Feb. 6, 2013) .............................................................6, 13

*Reese v. Anthem, Inc.*,
  2018 WL 1251658 (E.D. La. Mar. 12, 2018) ..........................................................9

*Rinky Dink, Inc. v. Elec. Merch. Sys.*,
  2015 WL 778065 (W.D. Wash. Feb. 24, 2015) ......................................................17

*Robert W. Mauthe, M.D., P.C. v. Optum Inc.*,
  925 F.3d 129 (3d Cir. 2019) ..................................................................................6

*In re Rules and Regulations Implementing*
  *the Telephone Consumer Protection Act of 1991*,
  18 FCC Rcd. 14014 (2003) ...................................................................................10

*In re Rules and Regulations Implementing*
  *the Telephone Consumer Protection Act of 1991*,
  7 FCC Rcd. 8752 (1992) .........................................................................................4

*Salmon v. CRST Expedited, Inc.*,
  2015 WL 1395237 (N.D. Okla. March 25, 2015) .....................................................9

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*,
  788 F.3d 218 (6th Cir. 2015) .......................................................................6, 7, 9, 14

*Savett v. Anthem, Inc.*,
  2019 WL 5696973 (N.D. Ohio Nov. 4, 2019) ......................................................6, 9

*Schaevitz v. Braman Hyundai, Inc.*,
  437 F. Supp. 3d 1237 (S.D. Fla. 2019) ..................................................................17

*Sliwa v. Bright House Networks, LLC*,
  333 F.R.D. 255 (M.D. Fla. 2019) ..........................................................................17

*Smith v. Blue Shield of Cal. Life & Health Ins. Co.*,
  228 F. Supp. 3d 1056 (C.D. Cal. 2017) .........................................................9, 12, 13

*Taylor Energy Company, L.L.C. v. Luttrell,*
    3 F.4th 172 (5th Cir. 2021) ...............................................................................17, 18

*Toney v. Advantage Chrysler-Dodge-Jeep, Inc.,*
    2021 WL 4896949 (M.D. Fla. July 27, 2021),
    *Report and Recommendation Adopted,*
    2021 WL 3910135 (M.D. Fla. Sept. 1, 2021) ...........................................................16

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ..............................................................................1, 16, 17

*Tri-Lady Marine, Ltd. v. Bishop Mech. Servs., LLC,*
    2018 WL 10466997 (S.D. Fla. Sept. 20, 2018) ........................................................11

*Trujillo v. Free Energy Savings Co. LLC,*
    2020 WL 7768722 (C.D. Cal. Dec. 21, 2020) .........................................................14

*Williams v. Nat'l Healthcare Rev.,*
    2017 WL 4819097 (D. Nev. Oct. 25, 2017) ....................................................7, 8, 12

*Williams-Diggins v. Republic Servs.,*
    2019 WL 5394022 (N.D. Ohio Apr. 25, 2019)...........................................................6

*Ybarra v. Dish Network, L.L.C.,*
    807 F.3d 635 (5th Cir. 2015) .................................................................................17

*Yearsley v. W.A. Ross Const. Co.,*
    309 U.S. 18 (1940)...........................................................................................17, 18

**Statutes**

47 U.S.C. § 227(b)(l)(A).................................................................................................17

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................3

**Other Authorities**

47 C.F.R. § 64.1200(f)(1) ...................................................................................1, 5, 6, 8

47 C.F.R. § 64.1200(f)(13) ....................................................................................1, 5, 6

### INTRODUCTION[1]

Plaintiff's Motion for Summary Judgment is contradicted by her testimony and unsupported by the law applicable to her TCPA claims.  The evidence and law demonstrate that her request for judgment on her claims and those of the alleged class should be denied, the motion for summary judgment filed by Allsup Employment Services, LLC ("AES") (ECF 82) should be granted, and no class can properly be certified in this case.

*First*, plaintiff admitted at deposition that she expressly agreed and consented in writing to being contacted by the Social Security Administration ("SSA") and its contractor, AES, regarding the SSA's free Ticket to Work Program.  Because she consented to AES's Ticket to Work messages, plaintiff is not entitled to summary judgment.

*Second*, plaintiff also admitted that AES's messages provided information regarding the free Ticket to Work Program, did not seek to sell or have her purchase anything, and did not address or discuss any other program or service.  Moreover, as a matter of federal law, the SSA's Ticket to Work Program is a free federal benefit that cannot be purchased or sold, and is not commercially available.  Plaintiff thus cannot show that AES's messages "encourag[ed] the purchase or rental of, or investment in, property, goods, or services" to constitute "telemarketing," 47 C.F.R. § 64.1200(f)(13), or "advertis[ed] the commercial availability or quality of any property, goods, or services" to constitute "advertising," *id.* § 64.1200(f)(1), foreclosing her argument that anything more than her express consent to be contacted was required.

*Third*, plaintiff's motion seeks entry of a class-wide judgment for TCPA damages.  Under Supreme Court and Eleventh Circuit precedent, "[e]very class member must have Article III standing in order to recover individual damages."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *see Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1275 (11th Cir. 2019) ("[B]efore it can award <u>any</u> relief, the district court will have to determine whether each member of the class has standing.").  Plaintiff has not even attempted to show that alleged class members have Article III standing to recover TCPA damages, nor can she do so under this Circuit's precedent.  This failure of proof precludes entry of class-wide summary judgment for plaintiff.

---

[1]  AES agrees with plaintiff that the Court should defer ruling on plaintiff's motion for summary judgment.  (ECF 90, Pl. Motion for Summary Judgment ("Pl. MSJ"), at n.1.)  AES respectfully submits that, given its dispositive nature, AES's summary judgment motion should be addressed before plaintiff's class certification and summary judgment motions.  *See* ECF 82, AES's Motion for Summary Judgment ("AES MSJ") at 19 (collecting cases).

**Fourth**, plaintiff's motion independently fails because AES has derivative (or qualified) immunity from TCPA liability as the SSA's Ticket to Work contractor.  The SSA, as an agency of the federal government, has sovereign immunity from TCPA liability.  As confirmed by the SSA's testimony in this case, AES is the SSA's Ticket to Work contractor who contacts beneficiaries regarding the Ticket to Work Program at the express direction and instruction of the SSA.  Plaintiff's motion presents no evidence to the contrary, let alone evidence establishing that AES's calls were not authorized by the SSA or that AES's authority to act on behalf of the SSA was not validly conferred by Congress.  Because AES is immune from TCPA liability in this case, plaintiff's motion fails for this reason as well.

## BACKGROUND

### A.    Plaintiff Expressly Agreed To Be Contacted By The SSA And Its Contractor AES Regarding The Ticket To Work Program.

Social Security Disability Insurance ("SSDI") is a federal benefit available only to eligible individuals who apply for and qualify to receive it.  (ECF 112, AES Opposing Statement of Facts ("OSF"), at ¶86.)  The Ticket to Work Program is a free Social Security disability benefit available only to eligible Social Security beneficiaries.  (OSF ¶87.)  Plaintiff receives SSDI benefits, which is what made her eligible for the Ticket to Work Program and was the reason SSA directed AES to contact her in the first place.  (*Id.* ¶88.)

Plaintiff voluntarily and willingly provided her cell phone number to the SSA without placing any limitations on the SSA's use of her number.  (*Id.* ¶89.)  Plaintiff expressly agreed in writing that SSA could use her information "for the administration and integrity of Social Security programs," which plaintiff admitted included the Ticket to Work Program.  (*Id.* ¶90.)  Plaintiff specifically agreed the SSA could disclose plaintiff's information "[t]o contractors … for the purpose of assisting SSA in the efficient administration of its programs."  (*Id.* ¶91.)  When plaintiff was awarded SSDI benefits, the SSA notified her about the Ticket to Work Program and that "[a] vocational rehabilitation or employment services provider may contact you to help you in going to work.  The provider may … work under contract with Social Security."  (*Id.* ¶92.)

AES is an Employment Network that "has worked on behalf of the SSA to administer the Ticket to Work Program for more than seven years."  (*Id.* ¶93 (quoting Declaration of Robert Pfaff, SSA Ticket to Work Program Director).)  "AES provides employment services through the Ticket to Work Program pursuant to a written Ticket Program Agreement ('TPA') with the SSA."  (*Id.* ¶94 (quoting Pfaff testimony).)   "AES is authorized to communicate with each assigned

Ticketholder [defined as eligible Social Security beneficiaries with disabilities] in order to inform them about the Ticket to Work Program." (*Id.* ¶95 (quoting Pfaff testimony).) AES's "communications may include telephone calls using automated technology, prerecorded messages, and text messages." (*Id.* ¶96 (quoting Pfaff testimony).)

**B.     AES Called Plaintiff About The Ticket To Work Program At SSA's Direction.**

The SSA sent AES a call list that included plaintiff's contact information and directed AES to contact the beneficiaries on that list. (*Id.* ¶97.) Plaintiff produced in discovery recordings of two of the four prerecorded voicemails she claims she received from AES. (*Id.* ¶¶98-99.) Plaintiff admitted that AES's messages "provided information regarding the Ticket to Work program" and that AES's "prerecorded calls wanted [plaintiff] to use [AES's] services to sign up for the Ticket to Work program," nothing else. (*Id.* ¶101.) Plaintiff also admitted that AES's messages did not "discuss[] any program other than the Ticket to Work program," did not seek to sell her (or to have her purchase) a Ticket to Work, and did not mention any other program or service. (*Id.* ¶102.)

Plaintiff has never been "offered any product or services by any Allsup entity other than Allsup Employment Services, LLC" and has never been referred to any other Allsup entity. (*Id.* ¶103.) AES's messages to plaintiff did not direct plaintiff to Allsup, LLC or encourage or promote the commercial availability or sale of any Allsup, LLC property, good or service. (*Id.* ¶104.) The language regarding Allsup having "helped people with their disability benefits for over 30 years" provides beneficiaries, who may have never heard of the Ticket to Work Program or know that it is related to their SSDI benefits, with background information and context for the Ticket to Work message they are receiving, and so that the beneficiaries know that AES "understand[s] their unique circumstances." (*Id.* ¶105.)

## ARGUMENT AND AUTHORITIES

In moving for summary judgment, plaintiff bears the burden of establishing each element of her claims under the TCPA. *See, e.g.*, *Basham v. Midland Funding, LLC*, 2022 WL 1125500, at *9 (E.D. Mo. April 15, 2022) ("It is plaintiff's burden to establish all the elements of her claim, and here she offers no evidence that a triable issue remains on her TCPA's artificial voice claims."); Fed. R. Civ. P. 56(a) (movants must demonstrate they are "entitled to judgment as a matter of law."). Plaintiff cannot do so here. Her summary judgment motion (like her class certification motion) ignores her admissions and the law applicable to her claims, which demonstrate that she is not entitled to summary judgment, summary judgment should be entered

for AES, and no class can be certified.[2]

## I.   PLAINTIFF EXPRESSLY CONSENTED AND AGREED TO BEING CONTACTED BY THE SSA AND AES.

A person who voluntarily provides her phone number gives express consent to being called at that number under the TCPA.  *See, e.g., Mais v. Gulf Coast Collection Bureau, Inc*., 768 F.3d 1110, 1118 (11th Cir. 2014) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.") (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 (1992)); *Murphy v. DCI Biologicals Orlando*, 797 F.3d 1302, 1308 ("By voluntarily providing his cell phone number to DCI, Mr. Murphy gave his prior express consent to be contacted."); *Lawrence v. Bayview Loan Servicing, LLC*, 666 F. App'x 875, 880 (11th Cir. 2016) ("[T]he provision of a mobile phone number, without limiting instructions, suffices to establish the consumer's general consent to be called under the TCPA."); *Lucoff v. Navient Sols., LLC*, 981 F.3d 1299, 1305 (11th Cir. 2020) (holding that plaintiff consented to receiving automated calls by submitting online form with his mobile phone number).

Here, plaintiff expressly consented to being contacted by the SSA and its contractor AES regarding the Ticket to Work Program.  Plaintiff voluntarily and willingly provided her cell phone number to the SSA and placed no limitations on the SSA's use of her number.  (OSF ¶89.)  Plaintiff expressly agreed in writing that SSA could use her information "for the administration and integrity of Social Security programs" and that the SSA could disclose her information "[t]o contractors … for the purpose of assisting SSA in the efficient administration of its programs." (*Id.* ¶¶90-91.)  Plaintiff also specifically agreed that the SSA "will disclose [her] records" to its contractors such as AES.  (*Id.* ¶91.)  And when plaintiff was awarded SSDI benefits, the SSA notified her about the Ticket to Work Program and that "[a] vocational rehabilitation or employment services provider may contact you to help you in going to work.  The provider may … work under contract with Social Security."  (*Id.* ¶92.)  By providing her telephone number to the SSA and agreeing to being contacted by the SSA and its contractor AES regarding the Ticket to Work Program, plaintiff expressly consented to receiving AES's calls about that Program as a

---

[2]  Plaintiff's motion does mention or address her "Do Not Call Registry" claim (Count III) and her requests for treble damages and for an injunction.  (Compl. ¶¶ 43, 51, 59.)  She has thus waived and forfeited any such relief.  *E.g.*, *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009).

matter of law.  *E.g., Mais*, 768 F.3d at 1124; *Murphy*, 797 F.3d at 1308; *Lawrence*, 666 F. App'x at 880 n.4.

Plaintiff's motion concedes these facts by failing even to address them.  Her only argument is that she did not provide her telephone number "directly to AES."  (ECF 87, Plaintiff's Statement of Material Facts ("Pl. SUF") ¶ 34; ECF 88, Pl. MSJ at 9.)  That is legally irrelevant.  "[T]he appropriate analysis turns on whether the called party granted permission or authorization, not on whether the [caller] received the number directly."  *Mais*, 768 F.3d at 1123.  It is settled that a party's consent to receive calls may be obtained through an intermediary, such as the SSA in this case.  *See id.* at 1124 ("[A] cell phone subscriber like Mais could provide his number to a creditor like Florida United—and grant prior express consent to receive … prerecorded calls—by affirmatively giving an intermediary like the Hospital permission to transfer the number to Florida United for use in billing."); *Cavero v. Franklin Collection Serv. Inc.*, 2012 WL 279448, at *3 (S.D. Fla. Jan. 31, 2012) ("[I]f Cavero provided a creditor such as AT&T with his cell phone number, he provided express consent to be called by [AT&T's debt collector] Franklin in connection with a debt owed to AT&T."); *Matter of GroupMe, Inc./Skype Commc'ns S.A.R.L Petition for Expedited Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 29 FCC Rcd. 3442, 3444 (2014) ("[A] consumer's prior express consent may be obtained through and conveyed by an intermediary"); *see also, e.g., Harrington v. Roundpoint Mort. Servicing Corp.*, 2017 WL 1378539, at *4 (M.D. Fla. April 11, 2017) (same).  Plaintiff expressly consented to being contacted by the SSA and AES regarding the Ticket to Work Program, requiring denial of her motion.  (*See* AES MSJ at 8-9.)

## II.   AES'S PRERECORDED MESSAGES DID NOT—AND UNDER FEDERAL LAW COULD NOT—TELEMARKET OR ADVERTISE UNDER THE TCPA.

AES's messages regarding the SSA's free Ticket to Work Program were not, and indeed could not be, telemarketing or an advertisement under the TCPA, and thus did not require anything more than plaintiff's express consent to be contacted.

### A.   AES's Messages Were Not Telemarketing Or An Advertisement.

The TCPA defines "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 C.F.R. § 64.1200(f)(13).  An "advertisement" is likewise defined as "material advertising the commercial availability or quality of any property, goods, or services."  *Id.* § 64.1200(f)(1).  The Eleventh Circuit has held that "[t]o fall within the Act" as an

advertisement, "the [message] must draw attention to the 'commercial availability or quality' of [defendant's] products to promote their sale," with "'profit as an aim.'" *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366-67 (11th Cir. 2017) (quoting *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 222 (6th Cir. 2015)).

In contrast, "statements which do not promote the commercial availability or quality of a good or service are informational messages exempted from the TCPA." *Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, 2013 WL 486207, at *4 (D.N.J. Feb. 6, 2013) (collecting cases); *e.g.*, *Florence Endocrine Clinic*, 858 F.3d at 1367 (faxes sent to doctors were not advertisements where they "do not 'promote the sale' of any Arriva product, but instead request information from physicians in connection with orders already placed by patients of those physicians."); *In the Matter of Acurian, Inc. Petition for Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 2021 WL 228010, at *3-4 (FCC Jan. 15, 2021) (prerecorded message calls requesting the recipient's participation in clinical drug trial "are not 'advertising' or 'telemarketing' because they do not identify property, goods, or services offered for sale by Acurian or its clients"; "Acurian's calls are merely seeking to inform the called party about a drug trial and potentially to recruit that called party to serve in such a trial, rather than asking the called party to purchase, rent or invest in property, goods or services.").[3]

Here, AES's Ticket to Work messages to plaintiff neither "encourage[d] the purchase or rental of, or investment in, property, goods, or services," 47 C.F.R. § 64.1200(f)(13), nor "advertis[ed] the commercial availability or quality of" such things, *id.* § 64.1200(f)(1), requiring denial of plaintiff's motion.

---

[3]  *See, e.g., Sandusky Wellness Ctr.*, 788 F.3d at 224 (where faxes "did not solicit business for a commercially available product or service," "they are not 'advertisements' under the" TCPA); *N.B. Indus., Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012) (same); *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 134-35 (3d Cir. 2019) ("Though defendants intended their faxes to obtain information enhancing the quality of their services, and thus reasonably calculated their faxes to increase their profits by keeping their database updated, the faxes did not attempt to influence the purchasing decisions of any potential buyer," and thus were not advertisements); *Williams-Diggins v. Republic Servs.*, 2019 WL 5394022, at *2 (N.D. Ohio Apr. 25, 2019) (where "the purpose of the calls was to inform, not to solicit business," and did not "encourage Plaintiff to purchase services," "the TCPA does not apply."); *Edelsberg*, 2018 WL 1509135, at *5 (faxes requesting information and which plaintiff admitted never "offer[ed] to sell [him] anything" were not telemarketing); *Savett v. Anthem, Inc.*, 2019 WL 5696973, at *7 (N.D. Ohio Nov. 4, 2019) ("informational messages are exempt from the TCPA under the non-telemarketing exception").

***First***, on their face, AES's messages concerned the "Ticket to Work Program," informed plaintiff that she was being contacted because of the SSA, and requested that she return the call so that AES could "sign [her] up" for the Program or to ask that she not receive any future calls. (OSF ¶¶98-99.)  There is nothing in the messages that encourages the purchase (or promotes the commercial availability or quality) of any property, good or service.  Where messages do not offer or otherwise promote the sale of any property, good or service, they are not telemarketing or an advertisement under the TCPA.  *E.g.*, *Florence Endocrine Clinic*, 858 F.3d at 1367; *Edelsberg v. Vroom, Inc*., 2018 WL 1509135, at *3 (S.D. Fla. Mar. 27, 2018) (texts were not telemarketing where plaintiff admitted defendant "never offer[ed] to sell [him] anything.'").

***Second***, plaintiff herself has admitted that AES's Ticket to Work messages were not telemarketing or an advertisement.  She testified that AES's messages "provided information regarding the Ticket to Work program" and that AES's "prerecorded calls wanted [plaintiff] to use [AES's] services to sign up for the Ticket to Work program," nothing else.  (OSF ¶101.)  Plaintiff admits that the messages did not "discuss[] any program other than the Ticket to Work program," did not seek to sell her (or to have her purchase) a Ticket to Work, and did not mention any other program or service.  (*Id.* ¶102.)

***Third***, as a matter of federal law, the Ticket to Work Program is a free Social Security disability benefit available only to eligible Social Security beneficiaries.  (*Id.* ¶87.)  A Ticket to Work and an EN's services provided under the Ticket to Work Program cannot be bought or sold, and thus are not "commercially available."  *Sandusky Wellness Ctr.*, 788 F.3d at 222-23 (when subject of message "was not 'available to be bought or sold' or 'for sale,' it was not 'commercially available' and thus not an ad under the Act.") (quoting *N.B. Indus., Inc. v. Wells Fargo & Co*., 465 F. App'x 640, 642 (9th Cir. 2012)); *see Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., Inc*., 2006 WL 1766812, at *1 (W.D. Mo. June 23, 2006).

***Fourth***, the case law uniformly holds, and Federal Communications Commission ("FCC") has recognized, that messages providing information about federal benefits or employment training and job opportunities—just like AES's messages here—are not telemarketing or an advertisement under the TCPA.  For example, in *Williams v. Nat'l Healthcare Rev.*, 2017 WL 4819097 (D. Nev. Oct. 25, 2017), the plaintiff was a hospital patient.  Defendant Adreima "contract[ed] with the Hospital to contact … patients who do not have insurance and/or cannot pay their Hospital bill to attempt to obtain insurance or assistance for the patient, which in turn pays

7

the Hospital, which in turn pays Adreima." *Id.* at *3.  After the plaintiff was discharged from the hospital, Adreima called and left several prerecorded messages on her cell phone to confirm whether she had insurance and to obtain additional information to determine if she was eligible for assistance, including from Medicaid.  *Id.*

The plaintiff sued Adreima and the hospital under the TCPA, claiming that Adreima's messages constituted advertising or telemarketing.  The court granted summary judgment for the defendants, holding that "Adreima's calls regarding Medicaid and/or charitable health coverage [did not] constitute 'advertising the commercial availability' of any good or service," and thus were not an advertisement under the TCPA:

> ***Medicaid is not a "commercially available" program under the plain meaning of that phrase***, as it is used to define "advertising."  *See* 47 C.F.R. § 64.1200(f)(1). Medicaid is a non-market-based, public program, in which the government of a state subsidizes medical care for only certain citizens who meet specific requirements.  It is immaterial that Adreima may be paid when a called customer signs up for Medicaid and Medicaid payments for that person are made to the hospital—***the call cannot be an advertising call if it does not promote a commercially available property, good, or service***."  *Id.* at 7 (emphasis added).

The court likewise rejected the plaintiff's telemarketing claim, holding that Adreima's calls "***seeking to encourage enrollment in a government program that provides free or heavily subsidized healthcare do[] not constitute encouragement of a 'purchase,' 'rental,' or 'investment' of a 'good, or service[].'***  Medicaid is generally provided to those otherwise unable to afford insurance, at little to no cost, and is not 'purchased' under the plain meaning of that word." *Id*. (emphasis added).

Similarly, in *Dennis v. Amerigroup Washington, Inc*., 2020 WL 618472 (W. D. Wash. Feb. 10, 2020), defendant Amerigroup made several automated calls to the plaintiff "related to Medicaid benefits administered under Amerigroup's [insurance] plan."  *Id.* at *1.  The calls addressed renewal of Medicaid benefits, sought healthcare screening information, and provided information regarding a new member ID card for prescription drugs.  *Id.* at *1-2.  The court held that "none of Amerigroup's calls qualify as telemarketing" or advertisements because they "are unrelated to commercial transactions and merely seek to gather or impart important information." *Id.* at *4.  "While Amerigroup may indirectly profit if more people are eligible for Medicaid under their plans, this does not matter because ***Amerigroup cannot 'encourage[] the purchase' of government benefits***." *Id.* at *5 (emphasis added); *see In the Matter of Acurian*, 2021 WL 228010,

at *4 ("Courts have also held that robocalls, … that provide only information on employment opportunities do not constitute 'advertisements' as they are not 'advertising the commercial availability or quality of any property, goods, or services.'").[4]

Courts in this Circuit and elsewhere have reached the same result, holding that messages about programs or services that neither sell nor promote a commercially available product or service are not telemarketing or advertising. *E.g., Florence Endocrine Clinic*, 858 F.3d at 1367 (affirming dismissal of TCPA advertising claim; "The faxes sent by Arriva to the clinic are not 'advertisements' within the meaning of the Act" where they "request[] only that the doctor of the patient fill out an order form to facilitate a purchase made by that patient."); *Sandusky Wellness Ctr.*, 788 F.3d at 220, 224 (affirming summary judgment; faxes sent to "chiropractic company, listing medications available in the health plans of the chiropractors' patients" "did not solicit business for a commercially available product or service."); *Gerrard v. Acara Sols., Inc.*, 469 F. Supp. 3d 96, 99 (W.D.N.Y. 2020) (text messages that "reference an employment opportunity" are not advertising or telemarketing, and collecting cases reaching the same conclusion for "recruitment-type messages or calls in analogous contexts" of offering employment or job opportunities); *Salmon v. CRST Expedited, Inc.*, 2015 WL 1395237, at *5 (N.D. Okla. March 25, 2015) (granting summary judgment where, "[o]n its face, the [automated call] message received by plaintiff offers free job training and employment upon completion of the training.").[5]

---

[4] *See, e.g., Smith v. Blue Shield of Cal. Life & Health Ins. Co.*, 228 F. Supp. 3d 1056, 1066 (C.D. Cal. 2017) (prerecorded messages regarding renewal of plaintiff's health care plan and new plan options to choose from were not telemarketing or advertising; "Blue Shield's telephone call is informational."); *Savett*, 2019 WL 5696973, at *5, 7 (same; prerecorded message calls "were meant to provide information to members about their insurance plan's benefits," "were purely informational, and members could take further steps if they desired but were not being asked to make any purchase"); *BPP v. CaremarkPCS Health, L.L.C.*, 2021 WL 5195785, at *2 (E.D. Mo. Nov. 9, 2021) (faxes were not advertisements where they "merely informed the recipient-doctor of cost-effective drugs for the doctor's own patients who were covered under the defendant's clients' health insurance plan.").

[5] *See also, e.g., In the Matter of Acurian*, 2021 WL 228010, at *4 ("[A] recruiter's call to discuss potential employment . . . with a consumer is not a 'telephone solicitation' to the extent the called party will not be asked during or after the call to purchase, rent or invest in property, goods or services."); *Reese v. Anthem, Inc.*, 2018 WL 1251658, at *1, 5 (E.D. La. Mar. 12, 2018) (text messages offering CPR training were informational); *Dolemba v. Ill. Farmers Ins. Co.*, 2015 WL 4727331, at *5 (N.D. Ill. Aug. 10, 2015) (prerecorded message inviting plaintiff to "participate in a 'town hall call' during which he would learn about becoming a Farmers insurance agent" was not telemarketing); *Friedman v. Torchmark Corp.*, 2013 WL 1629084, at *4 (S.D. Cal. Apr. 16,

In sum, AES's Ticket to Work messages did not telemarket or advertise under the TCPA because there is no "property, goods, or services" that are "commercially available" or which can be bought or sold, as a matter of federal law.  (*See* ECF 82, AES MSJ at 16.)

### B.   Plaintiff's "Dual Purpose Marketing" Argument Fails.

Plaintiff contends that "AES's Calls Were In Part To Market Allsup, LLC and its Affiliates,"[6] and thus constituted "dual-purpose" calls that were a "pretext for advertising."  (Pl. MSJ at 12-13.)  The law and plaintiff's own evidence negate this argument for several reasons.

***First***, as plaintiff's own authorities hold, a so-called "dual purpose" call still requires telemarketing or an advertisement as defined in the TCPA.  (Pl. MSJ at 13 (dual purpose call "is intended to ***offer property, goods, or services for sale*** either during the call, or in the future" (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2003 FCC Order"), 18 FCC Rcd. 14014, ¶ 142 (2003) (emphasis added)); (*see id*. at 12 (dual purpose call is "'used to advertise other products or services ***at cost***'" (citation omitted and emphasis added).)  Here, plaintiff has admitted that AES's Ticket to Work messages did not "discuss[] any program other than the Ticket to Work program," did not seek to sell her (or to have her purchase) a Ticket to Work, and did not mention any other program or service.  (OSF ¶102.)  She further admitted she has never been "offered any product or services by any Allsup entity other than Allsup Employment Services, LLC" and has never been referred to any other Allsup entity.  (*Id.* ¶103.)  As plaintiff's own authorities hold, where "the call did not promote or advertise any product for sale, nor did it attempt to persuade or entice plaintiff to buy or invest in any commercially available product, good, or service, either now or in the future, plaintiff's claim requires dismissal."  *Alleman v. Yellowbook*, 2013 WL 4782217, at *4 (S.D. Ill. Sept. 6, 2013) (Pl.

_____

2013) (prerecorded message making "an offer of employment is not 'material advertising the commercial availability ... of any property, goods, or services' within the ordinary meaning of those words of the TCPA."); *Phillip Long Dang, D.C., P.C. v. XLHealth Corp*., 2011 WL 553826, at *4 (N.D. Ga. Feb. 7, 2011) ("Instead of 'promoting goods and services' in the commercial sense, Defendants' communication alerted the recipient that a free seminar would be offered, wherein the recipient could learn more about the Defendants' billing processes and thereby speed up payment to the recipient"); *Lutz App. Servs., Inc. v. Curry*, 859 F. Supp. 180, 181 (E.D. Pa. 1994) ("A company's advertisement of available job opportunities … is not the advertisement of the commercial availability of property.").

[6] Plaintiff's motion refers to "Allsup, LLC and its affiliates" but the only affiliate she argues about is Allsup, LLC.  She has thus waived and forfeited any argument regarding any other Allsup entity.

MSJ at 14).

**Second**, plaintiff argues that the "'relevant question is Defendant's **purpose** in initiating the calls'" (Pl. MSJ at 14-15), but plaintiff herself has conclusively answered that question. Plaintiff's complaint specifically alleges that "the **purpose** of [AES's] message was to advertise, market and/or promote [AES's] goods, products, and/or services," not Allsup, LLC's services. (ECF 1-2, Compl. ¶ 17 (emphasis added); *see id.* ¶ 2 (AES made prerecorded calls "[t]o promote its business".) Indeed, plaintiff's complaint does not mention Allsup, LLC or any Allsup entity besides AES. Moreover, when asked by interrogatory to "identify any facts" to support this allegation, plaintiff answered, "[t]he prerecorded calls wanted [plaintiff] to use [AES's] services to sign up for the Ticket to Work program," not to sign up for Allsup, LLC's services. (OSF ¶101.)

"'[T]he general rule [is] that a party is bound by the admissions in [her] pleadings' and "'facts judicially admitted are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them.'" *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177-78 (11th Cir. 2009) (citations omitted); *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (party's "admission in its pleadings is binding and conclusive"); *Tri-Lady Marine, Ltd. v. Bishop Mech. Servs., LLC*, 2018 WL 10466997, at *3-4 (S.D. Fla. Sept. 20, 2018). Plaintiff's concession that the "purpose" of AES's messages was to discuss the Ticket to Work Program and AES's services under that Program is a judicial admission that is conclusive, binding, and requires denial of her motion.

**Third**, AES's messages do not "use the Allsup, LLC name," as plaintiff claims. (Pl. MSJ at 7; *see id.* ¶ 18.) Nor do the messages direct plaintiff to Allsup, LLC or encourage or promote the commercial availability or sale of any Allsup, LLC property, good or service. (OSF ¶104.) If a beneficiary calls (888) 570-5970, the number in AES's messages, an AES representative answers the call to discuss the Ticket to Work Program, not Allsup, LLC's services. (*Id.* ¶100.)

**Fourth**, plaintiff concedes that Allsup, LLC's business is to assist individuals with applying for and obtaining federal SSDI benefits. (Pl. SUF ¶ 56; Pl. MSJ at 2.) AES's Ticket to Work messages do not address applying for/obtaining SSDI benefits, and for an obvious reason: plaintiff already receives SSDI benefits, which is what made her eligible for the Ticket to Work Program and is the reason SSA directed AES to contact her in the first place. (OSF ¶88.) Any claim that AES is "marketing" to plaintiff and other beneficiaries a free federal benefit they already receive is nonsensical and explains why plaintiff has no evidence of a single beneficiary ever being

referred to Allsup, LLC for its SSDI services.  No such evidence exists.

*Fifth*, like the Ticket to Work, SSDI is a federal benefit available only to eligible individuals who apply for and qualify to receive it.  (*Id.* ¶87.)  SSDI benefits are not commercially available and cannot be bought or sold, and thus they cannot be telemarketed or advertised under the TCPA as a matter of federal law.  *See Dennis*, 2020 WL 618472, at *5 (defendant "cannot 'encourage[e] the purchase' of government benefits" as a matter of law); *Williams*, 2017 WL 4819097, at *7 ("Medicaid is not a 'commercially available' program under the plain meaning of that phrase, as it is used to define 'advertising.'").

*Sixth*, while some AES messages mention "Allsup" and having "helped people with their disability benefits for over 30 years[]" (Pl. MSJ at 6-7), "that brief reference does not rise to the level of encouraging the purchase of goods or services" from Allsup, LLC.  *Daniel v. Five Stars Loyalty, Inc*., 2015 WL 7454260, at *5 (N.D. Cal. Nov. 24, 2015).  That language provides beneficiaries, who may have never heard of the Ticket to Work Program or know that it is related to their SSDI benefits, with background information and context for the Ticket to Work message they are receiving.  (OSF ¶105.)  The Ticket to Work is itself a Social Security disability benefit.  (*Id.* ¶86)  Plaintiff has no evidence that the SSA has ever objected to providing such information.

Moreover, even if the language plaintiff points to could reasonably be construed as promoting or encouraging Allsup LLC's SSDI services—and it cannot—that would not make AES's Ticket to Work messages dual purpose messages.  This Court and many others have repeatedly held that "communications that merely include collateral opportunities to purchase something from the caller do not constitute dual purpose messages where the opportunity to purchase something from the caller is too attenuated from the purpose of the initial communication." *Edelsberg*, 2018 WL 1509135, at *6 (collecting cases); *Jance v. Homerun Offer LLC*, 2021 WL 3270318, at *4 (D. Ariz. July 30, 2021) ("[T]he [TCPA] regulation's wording is aimed at calls that directly advertise and 'not calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future.'") (citation omitted).[7]

---

[7]  *E.g.*, *BPP v. CaremarkPCS Health, L.L.C.*, 2021 WL 5195785, at *3 (E.D. Mo. Nov. 9, 2021) ("[T]he inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits."); *Broking v. Green Brook Buick GMG Suzuki*, 2017 WL 3610490, at *5 (D.N.J. Aug. 22, 2017) (even where "the purpose of the [calling] Campaign was ultimately to sell more" products, "[t]his purpose is too attenuated from the robocall, … to render the robocall a telemarketing message."); *Smith*, 228 F. Supp. 3d at1065-68

Plaintiff cites no authority to the contrary.

**Seventh**, plaintiff concedes that various AES messages sent to beneficiaries did not contain the language plaintiff claims telemarketed or advertised Allsup, LLC.  (Pl. SUF ¶ 83 (admitting that not all messages "contained references to Allsup, LLC or Allsup, LLC's thirty years of experience"); Pl. MSJ at 12 (same).)[8]  Plaintiff's motion presents no evidence as to which or how many class members were sent which type of message.  Alleged class members who did not receive a so-called telemarketing/advertising message have no claim even under plaintiff's theory of liability, and thus are not entitled to any judgment.  Plaintiff's failure of proof on this issue precludes any entry of class-wide summary judgment in plaintiff's favor.

**Eighth**, plaintiff contends that AES's website "advertised" "Allsup, LLC's services" (Pl. MSJ at 8; *see id.* at 12), but AES's website is ***not*** mentioned or referenced in ***any*** AES message and plaintiff admits that she has ***never*** visited AES's website.  (OSF ¶¶107-108.)[9]  Regardless, even if AES's messages had mentioned its website—and they do not—that would not constitute telemarketing or advertising under the TCPA, as this Court and others have repeatedly held.  *See, e.g., Edelsberg*, 2018 WL 1509135, at *5-6 (collecting cases); *Smith*, 228 F. Supp. 3d at 1067 ("The mere fact that parts of Blue Shield's website contains the capability of allowing consumers to engage in commerce does not transform any message including its homepage into telemarketing or advertising.").

**Ninth**, plaintiff asserts that AES may refer beneficiaries to another Allsup entity "***if they expressed a need for a service*** offered by one of those entities" or "***in response to inquiries by beneficiaries*** regarding services that those entities may offer."  (Pl. SUF ¶¶ 11, 62 (emphasis

---

(prerecorded messages were not telemarketing or advertisements; "Blue Shield's overarching incentive to retain customers and receive premium payments" "is simply too attenuated to give rise to a clear, unequivocal implication of advertising."); *Physicians Healthsource*, 2013 WL 486207, at *4 ("Indeed, the potential to gain some benefit from sending information, without the presence of additional commercial statement in the message, is insufficient to transform an informational message to an advertisement.").

[8]  Under plaintiff's theory, the use of the name "Allsup" by itself (i.e., without having "helped people … for over 30 years") cannot constitute telemarketing/advertising, as it is part of Allsup Employment Services's name.  (*See* Pl. MSJ at 12 (arguing that AE's messages "promoted Allsup, LLC *and* its thirty years of experience") (emphasis added).)

[9]  AES's website is public facing and can be accessed by any member of the public.  (OSF ¶106.) That is, individuals who visit the website may not be a beneficiary already and so would not have received a call about the Ticket to Work Program.

added).)  Putting aside that plaintiff has no evidence that any beneficiary has ever been referred by AES to Allsup, LLC for its SSDI services, a ***beneficiary's own request*** for information or assistance does not make AES's Ticket to Work messages telemarketing or an advertisement.

 ***Tenth***, plaintiff contends that "[d]uring the process of completing an IWP [the Individual Work Plan a beneficiary completes to receive AES's employment-related services under the Ticket to Work Program], a beneficiary ***could*** be provided information … identified in paragraph 14 of the IWP," which states: "Beneficiary acknowledges and agrees that the beneficiary has received or may receive information regarding services available through AES' corporate affiliates…"  (Pl. SUF ¶ 10 (emphasis added); Pl. MSJ at 7-8.)  Plaintiff does not explain how this language would make AES's Ticket to Work messages telemarketing or an advertisement, particularly where the beneficiary requests such information.  Moreover, plaintiff ignores that the SSA's Ticket Program Agreement with AES expressly allows "Services offered outside the Ticket Program" and provides that "[a]n EN may charge for services offered outside the Ticket Program" should a beneficiary "wish to purchase such services," which negates any claim that providing such information in the IWP transforms AES's messages into telemarketing or an advertisement.  (Response to OSF ¶27); *see, e.g., Sandusky Wellness Ctr.*, 788 F.3d at 225 ("The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation.").

 ***Eleventh***, plaintiff's argument about AES's so-called "Business Model" does not salvage her claim.  (Pl. MSJ at 2-3.)  Where, as here, AES's messages do not sell anything or promote any commercially available good or service, plaintiff "cannot rely on [Allsup's] overarching business model, which includes [SSDI services], to transform the stated purpose" of AES's Ticket to Work messages.  *Edelsberg*, 2018 WL 1509135, at *7; *Trujillo v. Free Energy Savings Co. LLC*, 2020 WL 7768722, at *3 (C.D. Cal. Dec. 21, 2020) (granting defendant's motion for partial summary judgment; "Plaintiff asks the Court to infer from Defendant's business model that Defendant has an implicit economic motive to inform consumers about free weatherization services.  But a general economic incentive does not equate to, or give rise to a reasonable inference of, a specific purpose to encourage the purchase, rental, or investment in property, goods, or services.").

 In sum, AES's Ticket to Work messages are not, and as a matter of law cannot be, dual-purpose telemarketing or an advertisement under the TCPA.  Accordingly, plaintiff's motion should be denied.  (*See* AES MSJ at 14-16.)

C.      Plaintiff's Cases Are Inapposite.

Plaintiff's own cases do not support her "dual purpose" message argument.  ***First***, almost all of the cases cited by plaintiff involved messages that directly promoted or encouraged the purchase of a good or service.  *See Drug Reform Coordination Network, Inc. v. Grey House Publ'g, Inc.*, 106 F.Supp.3d 9, 13(D.D.C. 2015) (faxes followed by emails offering directory "for sale"); *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 918 (9th Cir. 2012) ("The robot-calls urged the listener to 'redeem' his Reward Zone points," which "required going to a Best Buy store and making further purchases of Best Buy's goods.  There was no other use for the Reward Zone points."); *Chinitz v. NRT West, Inc*., 2019 WL 720996, at *3 (N.D. Cal. Feb. 20, 2019) ("Chinitz alleged that each time he received NRT's prerecorded message, a live person would follow up on behalf of NRT to attempt to sell its real estate brokerage services."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 817, 820 (8th Cir. 2015) (prerecorded messages promoted a movie and urged recipients to see it); *Flores v. Access Ins. Co*., 2017 WL 986516, at *1 (C.D. Cal. March 13, 2017) ("defendant sent text messages … 'soliciting [p]laintiff to renew his auto insurance policy'"); *Moore v. Pro Custom Solar LLC*, 2022 WL 1092186, at *3-4 (N.D. Ill. April 12, 2022) (defendants' calls offered "an in-home solar services appointment," with one defendant admitting "that it called [plaintiff] for the purpose of advertising or selling 'solar services'"); *Bennett v. GoDaddy.com LLC*, 2019 WL 1552911, at *3 (D. Ariz. April 8, 2019) (when plaintiff asked if defendant was making a "sales call," defendant responded, "we're calling about some products you have so I mean, however you want to take it.").

***Second***, plaintiff's other cases were decided at the motion to dismiss stage, and lack the fully developed record (including plaintiff's admissions) that exists in this case.  *E.g., Fiorarancio v. WellCare Health Plans, Inc*., 2022 WL 111062, at *10 (D.N.J. Jan. 11, 2022) (denying motion to dismiss in part because "more evidence about the calls is needed to determine whether or not they were a pretext"); *Mittelmark v. Yoga Joint S., LLC*, 2018 U.S. Dist. LEXIS 211620, at *9 (S.D. Fla. Dec. 14, 2018) (same; "there are numerous factual issues outside of the four corners of the Amended Complaint that would be relevant to determining whether the text messages at issue constituted 'dual purpose' telemarketing").  Plaintiff, in short, cites no authority to support her argument that AES's messages promoted or sought to sell Allsup, LLC's SSDI services.

### III.   PLAINTIFF FAILS TO SHOW ALLEGED CLASS MEMBERS HAVE STANDING TO RECOVER DAMAGES UNDER THE TCPA.

Plaintiff's motion seeks entry of class-wide "entry of summary judgment against AES in the amount of $500 per call...."  (Pl. MSJ at 20.)  The Supreme Court and Eleventh Circuit have made clear, however, that "[e]very class member must have Article III standing in order to recover individual damages."  *TransUnion*, 141 S. Ct. at 2208; *Cordoba*, 942 F.3d at 1275 ("[B]efore it can award <u>any</u> relief, the district court will have to determine whether each member of the class has standing.").  Plaintiff has not even attempted to show that alleged class members have Article III standing to recover damages, nor can she do so.

Courts in this Circuit have held that plaintiffs and alleged class members who receive ringless automated voicemail messages and cannot show that those messages disabled their phones for some period of time lack Article III standing to sue under the TCPA.  *See Grigorian v. FCA US LLC*, 838 F. App'x 390, 393-94 (11th Cir. 2020) (holding that plaintiff who alleged she received ringless prerecorded voicemail lacked standing; plaintiff "has provided facts that she lost personal time listening to the voicemail.  She has not, however, provided facts to show that the single prerecorded voicemail rendered her phone unavailable to receive legitimate calls or messages for any period of time.  Without more, we cannot say that she met her burden to show she had standing"); *Toney v. Advantage Chrysler-Dodge-Jeep, Inc.*, 2021 WL 4896949, at *5 (M.D. Fla. July 27, 2021), *Report and Recommendation Adopted*, 2021 WL 3910135 (M.D. Fla. Sept. 1, 2021) ("Following *Grigorian*, the putative class members would have to show that the ringless voicemails rendered their phones inoperable for a period of time").[10]

It is undisputed in this case that the messages plaintiff challenges went to beneficiaries' answering machines/voicemails "even when [the] phone is in do not disturb, airplane mode, powered down or the outbound phone number was previously blocked by the recipient"—that is, such message were ringless to the recipients.  (OSF ¶109.)  Despite this, plaintiff presents no evidence as to which or how many alleged class members received ringless messages that disabled their phones' use for some period of time, and which alleged class members did not.  This failure

---

[10]  Plaintiff cites *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019), a case on which the Eleventh Circuit has never relied and at least one other court has held "is fundamentally inconsistent" with the Eleventh Circuit's "fact intensive analysis" of standing under the TCPA. *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 427 n.4 (E.D. Va. 2021), *appeal dismissed*, 2021 WL 6689144 (4th Cir. Oct. 12, 2021).

of proof precludes entry of summary judgment on a class-wide basis. *See TransUnion*, 141 S. Ct. at 2214 (reversing judgment as to class members who lacked standing). This same fundamental flaw also shows why class certification would be improper in this case. (ECF 56, AES Class Opp. at 19-22.) [11]

## IV.   AS THE SSA'S CONTRACTOR AUTHORIZED TO SEND PRERECORDED MESSAGES, AES IS IMMUNE FROM LIABILITY UNDER THE TCPA.

Plaintiff's motion independently fails because AES has derivative (or qualified) immunity from TCPA liability as the SSA's Ticket to Work contractor. The SSA, as a federal agency, has sovereign immunity from liability under the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 166 (2016); *Yearsley v. W.A. Ross Const. Co*., 309 U.S. 18, 20-21 (1940). Federal government contractors are entitled to derivative/qualified immunity where their work is authorized by the agency to fulfill a Congressional mandate. "[U]nder *Yearsley*, a government contractor is not subject to suit if (1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 643 (4th Cir. 2018) (holding contractor not liable under the TCPA for prerecorded message calls made to assist government agency in carrying out statutory mandate) (citation omitted); *e.g.*, *Taylor Energy Company, L.L.C.*

---

[11] Plaintiff's argument that "the TCPA does not require that 'the recipient of a call … answer the phone or somehow be aware of the call'" relies on inapposite case law. (PM at 11 (citation omitted). *Schaevitz v. Braman Hyundai, Inc.* was decided before *Grigorian*, and, in any event, the plaintiff in that case alleged the ringless-voicemail message "disrupted his daily life." 437 F. Supp. 3d 1237, 1244 (S.D. Fla. 2019). *Rinky Dink, Inc. v. Elec. Merch. Sys.* did not address when a prerecorded message is actionable, but instead whether the TCPA applies to a carrier over whose network a call passes. 2015 WL 778065, *4-6 (W.D. Wash. Feb. 24, 2015). Plaintiff's remaining cases involved provisions of the TCPA that—unlike the provision regarding prerecorded messages at issue here, 47 U.S.C. § 227(b)(l)(A)—require only that the call is placed or the fax sent. *See Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 308 (S.D. Fla. 2019) (prohibition on placing calls with an automatic telephone dialing system); *Hinman v. M&M Rental Ctr., Inc.*, 596 F. Supp.2d 1152, 1159 (N.D. Ill. 2009) (prohibition on sending faxes). In short, none of plaintiff's cited cases avoids the standing problem that precludes entry of class-wide summary judgment for plaintiff. And to the extent plaintiff claims that a violation of TCPA § 227(b)(l)(A) occurs when the call is sent, that is incorrect as a matter of law. *See, e.g., Ybarra v. Dish Network, L.L.C.*, 807 F.3d 635, 640 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded voice' section of the TCPA, we conclude that a defendant must make a call and an artificial or prerecorded voice must actually play"); *Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 280 (M.D. Fla. 2019) (denying class certification; "whether a [prerecorded voice] 'should have played' does not establish that it did in fact play").

*v. Luttrell*, 3 F.4th 172, 175 (5th Cir. 2021).[12]

Here, as the SSA's testimony confirms, AES is an Employment Network that "***has worked on behalf of the SSA to administer the Ticket to Work Program*** for more than seven years"; "***AES provides employment services through the Ticket to Work Program pursuant to a written Ticket Program Agreement*** ('TPA') with the SSA"; "***AES is authorized to communicate with each assigned Ticketholder*** [defined as eligible Social Security beneficiaries with disabilities] in order to inform them about the Ticket to Work Program"; and AES's "***communications may include telephone calls using automated technology, prerecorded messages, and text messages***." (OSF ¶¶93-96 (emphasis added).)

Plaintiff has presented no evidence to the contrary, let alone evidence establishing that AES's calls were not authorized and directed by the SSA or that AES's authority to act on behalf of the SSA was not validly conferred by Congress. As "there [i]s no material factual dispute about the Government's authorization of and direction over [AES's] work," AES's is entitled to derivative immunity and plaintiff's motion should be denied. *Luttrell*, 3 F.4th at 176.[13]

---

[12]  Plaintiff's assertion that the Supreme Court "has rejected" the "derivative sovereign immunity defense," citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), is incorrect. (Pl. MSJ at 18-19.) *Campbell-Ewald* recognized that "[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Id.* at 577 U.S. at 166; *see id.* at 167 ("'there is no liability on the part of the contractor' who simply performed as the Government directed.") (quoting *Yearsley*, 309 U.S. at 20-21).

[13]  Plaintiff spends much of her motion discussing texting issues that predate the proposed class period in this case and even though (i) she never received any text from AES, (ii) she has no claim (individual or class) based on texting, (iii) the SSA's requirements for texting are different from its requirements for prerecorded messages and thus do not show that AES's prerecorded messages calls violated the SSA's directions or the TCPA, and (iv) AES continues to serve as the SSA's Ticket to Work contractor and its "communications [with beneficiaries] may include … text messages." (OSF ¶¶ 96, 110-111.) As plaintiff's texting assertions are irrelevant to her claims and do not create a genuine issue as to any material fact, they should be disregarded. *E.g., Harrington v. RoundPoint Mortgage Serv'g Corp.*, 2017 WL 1331072, at *12-13 (M.D. Fla. April 11, 2017) (where TCPA plaintiff's proposed evidence "is irrelevant for the purposes of adjudicating" summary judgment, "the Court will simply disregard it while addressing the matter at bar."); *Murray v. Birmingham Bd. of Educ.*, 172 F.Supp.3d 1225, 1234 (N.D. Ala. 2016) ("To the extent, if any, that the testimony covers additional time periods and information irrelevant or improper for the instant case, the court is capable of disregarding that information for summary judgment purposes."); *see also, e.g., Johnson v. Cap. One Servs., LLC*, 2019 WL 5190788, at *2 (S.D. Fla. Oct. 15, 2019) (holding that "any introduction of evidence relating to [defendant]'s communications with individuals other than Plaintiff… is irrelevant").

## <u>CONCLUSION</u>

Plaintiff's TCPA claims are a concocted creation unsupported by the evidence, belied by plaintiff's sworn admissions, and refuted by the law.  Plaintiff's summary judgment motion should be denied, AES's summary judgment motion should be granted, and no class should be certified.

Dated:  June 22, 2022

Respectfully submitted,

By: /s/ *Nadia Abramson*
Richard C. Godfrey, P.C. (*pro hac vice*)
Andrew B. Bloomer, P.C. (*pro hac vice)*
R. Allan Pixton (*pro hac vice)*
Kelsey Bleiweiss (*pro hac vice*)
Nadia Abramson (FL Bar No. 121763)
Kirkland & Ellis LLP
300 North LaSalle St.
Chicago, IL  60654-3406
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email: richard.godfrey@kirkland.com
        andrew.bloomer@kirkland.com
        allan.pixton@kirkland.com
        kelsey.bleiweiss@kirkland.com
        nadia.abramson@kirkland.com

Buffey E. Klein
Florida Bar No. 0034639
Husch Blackwell LLP
1900 N. Pearl Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 999-6100
Facsimile: (214) 999-6170
Email: buffey.klein@huschblackwell.com

Scott J. Helfand (*pro hac vice*)
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, Illinois 60606
Telephone: (312) 655-1500
Facsimile: (312) 655-1501
Email: scott.helfand@huschblackwell.com

*Counsel for Allsup Employment Services, LLC*

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2022, I electronically filed the foregoing Opposition brief using the CM/ECF system, which will serve notification of such filing to the email of all counsel of record in this action.

By: /s/ *Nadia Abramson*