Case 1:21-cv-21121-BB   Document 119   Entered on FLSD Docket 06/29/2022   Page 1 of 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 1:21-cv-21121-BLOOM/Otazo-Reyes**

ANNETTE BARNES, *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

ALLSUP EMPLOYMENT SERVICES, LLC,

    Defendant.

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Annette Barnes hereby replies to Defendant Allsup Employment Services, LLC's Opposition to Plaintiff's Motion for Summary Judgment, [DE 114], and states:

## I. INTRODUCTION

AES fails to advance a single argument to support denial of summary judgment in favor of Plaintiff and the Class members.

First, whether Plaintiff provided express consent to the SSA is immaterial because AES was required to secure express ***written*** consent before engaging in advertising and telemarketing.

Second, AES continues to ignore (1) the plain language of its robocalls – which expressly advertised Allsup, LLC and Allsup, LLC's years of experience in assisting beneficiaries with benefits, (2) its IWP which discusses referring beneficiaries to AES's affiliates, and (3) the fact that beneficiaries were referred to AES's affiliates for paid services.

Third, AES rehashes the same flawed arguments it raised in its opposition to Plaintiff's Motion for Class Certification regarding class member standing. Plaintiff has shown that she and every class member have standing by virtue of receiving multiple unsolicited telephone calls – that is all that is needed. And if this Court disagrees, the case should be remanded to state court. AES cannot have it both ways: it cannot remove a case to federal court only to disclaim Article III standing when it suits it.

Finally, AES's immunity defense fails because AES is not entitled to derivative immunity, and, even if it were, AES acted outside the scope of its governmental grant of authority and is therefore not entitled to any type of immunity.

This Court should therefore grant summary judgment to Plaintiff and the Class members.

## II. ARGUMENT

### A. The Applicable Standard is Express Written Consent, not Express Consent.

By failing to respond to the issue, AES concedes that it never secured express ***written*** consent from Plaintiff or any member of the Class. *See S. Miami Holdings v. FDIC*, No. 10-CV-22032-UU, 2011 U.S. Dist. LEXIS 169583 (S.D. Fla. Aug. 1, 2011) ("The Court construes its failure to respond as a concession that summary judgment should be granted on Count V."). AES instead spends two pages discussing Plaintiff's provision of her telephone number to the SSA and the "express consent" standard, neither of which are relevant here because, as discussed below, AES was engaged in telemarketing and was therefore required to comply with the TCPA's express written consent requirements. *See* 47 C.F.R. §64.1200(a)(2); (a)(3); *Gerrard v. Acara Sols. Inc.*,

No. 18-CV-1041V(F), 2019 U.S. Dist. LEXIS 108038, at *10 (W.D.N.Y. June 27, 2019) ("If the text message is an advertisement or telemarketing prior express ***written*** consent is therefore required to avoid TCPA liability.") (emphasis original).

### B. <u>AES's Robocalls Advertised Allsup, LLC</u>.

AES cannot dispute the law: calls "advertising the commercial availability or quality of any property, goods, or services[]" are considered advertisements that require the express written consent of the called party. Resp. at 5-6 (quoting 47 C.F.R. § 64.1200(f)(1)). AES is also unable to dispute that almost every robocall it sent to Plaintiff and the Class members explicitly discussed the quality of the services offered by Allsup, LLC and its 30 years of experience in assisting beneficiaries with their SSDI benefits, SOF ¶¶57, 83-85, including the two messages it sent to Plaintiff which stated, "Hi, this is Sarah with Allsup. We have helped people with their Social Security disability benefits for more than 30 years[,]" and "Our name is Allsup….We have helped people with their disability benefits for over 30 years." OSF ¶¶98, 99.

Instead, it claims that Plaintiff admitted that the calls were not telemarketing, but Plaintiff's deposition testimony on which AES relies says no such thing. Plaintiff testified that she did not recall the specific content of the calls. Reply to OSF ¶101, 102. Moreover, as a layperson, Plaintiff's legal understanding is not dispositive as AES contends. *See Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 240 (N.D. Cal. 2014) ("Plaintiff Lilly's layperson understanding of the word 'harm' has no effect on her legal claim. Plaintiffs have established typicality and adequacy."); *Laney v. Am. Standard Cos.*, Civil Action No. 07-3991 (PGS), 2010 U.S. Dist. LEXIS 100129, at *70-71 n.16 (D.N.J. Sep. 23, 2010) ("During his deposition, when AS's counsel asked Laney what law he thought would apply to his claims he responded with Texas….Laney is a lay person, not an attorney, and most likely never considered such a question, or understood its legal significance."); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 337 (S.D.N.Y. 2010) ("Plaintiffs are entitled to rely 'on their attorneys to articulate the . . . legal theories that apply to their claims.'") (quoting *Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113, 123 (S.D.N.Y. 2001)).

And contrary to AES's arguments that there must be a sale involved, "***[a]dvertising is…'the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public***,' Webster's Third New International Dictionary 31 (1986)." *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 221-22 (6th Cir. 2015) (quoting Webster's Third New International Dictionary 31 (1986)) (emphasis supplied). In other words, the

"*Sandusky*-approved definition from Webster's defines advertising in relevant part as: 'the action of calling ... a service ... desired to the attention of the public.'" *Lyngaas v. J. Reckner Assocs.*, No. 2:17-CV-12867-TGB, 2018 U.S. Dist. LEXIS 127345, at *8 (E.D. Mich. July 31, 2018).

The case of *Levine Hat Co. v. Innate Intelligence, LLC*, 538 F. Supp. 3d 915 (E.D. Mo. 2021), is instructive on the issue. In that case, the defendant sent fax blasts offering a free lunch seminar, but also stating that the faxes were from a "'group of wellness consultants and clinicians dedicated to improving the health of a business one employee at a time.' These 'wellness consultants and clinicians' have 'offices around the country,' and they 'offer the highest quality, proactive wellness education and care on the planet, both on-site and in our offices.'" *Id*. at 921. Accordingly, the court held that "[t]hat information alone—notwithstanding the 'free lunch' aspect of the fax—suffices to render the fax an advertisement. It clearly promotes the services provided by Innate Wellness Centers, which are in the business of wellness care and education." *Id*.; *see also Pimental v. Google Inc.*, 2012 U.S. Dist. LEXIS 28124, 2012 WL 691784 (N.D. Cal. 2012) (finding that plaintiff sufficiently stated TCPA claim where plaintiff alleged that defendant sent text message stating, "Disco is a group texting service. Standard SMS rates may apply or chat for FREE w/ our app—http:// disco.com/d[,]" and this message therefore advertises defendant's service and mobile application); *Physicians Healthsource v. Masimo Corp.,* No. SACV14-00001JVS(ADSx), 2020 U.S. Dist. LEXIS 165844, at *9 (C.D. Cal. July 13, 2020) ("Plaintiffs argue that both faxes advertise the 'commercial availability' and 'quality' of the goods. MSJ, 9. The Court agrees. The October 2011 fax contains language 'introducing the Pronto' product and explaining that it has 'noninvasive & quick' technology for 'painless' spot check testing of a variety of values. SAC, Ex. A. The fax also has a section stating: 'Contact Us For a free, no obligation In-office Demonstration of the Masimo Pronto'….").

In opposing Plaintiff's Motion for Summary Judgment, AES

> conflate[s] 'telemarketing' and 'advertisement.' For example, defendant argues that the link provided in its text message 'is not advertising the purchase of the QLess app.' But the act prohibits a text that is "advertisement *or* constitutes telemarketing." 47 C.F.R. § 64.1200(a)(2) (emphasis added). And although telemarking in this case would be defined as "for the purpose of encouraging the *purchase*" of an app or service, advertisement in a text is defined as "any material advertising the commercial availability *or* quality" of an app or service. *See* 47 U.S.C. §§ 227(a)(4), (a)(5) (emphasis added); 47 C.F.R. §§ 64.1200(f)(1), (f)(12).

3

*Herrick v. QLess, Inc.*, 216 F. Supp. 3d 816, 819 (E.D. Mich. 2016) (emphasis original); Resp. at 7 ("Where messages do not offer or otherwise promote the sale of any property, good or service, they are not telemarketing or an advertisement under the TCPA."). Accordingly, the fact that AES's robocalls do not directly promote the sale of a service is not material to the issue of whether the calls are advertisements. AES's robocalls are advertisements because they call attention to the services offered by Allsup, LLC.

Next, AES cites cases that cut against its position. For example, in *Williams v. Nat'l Healthcare Rev.*, the calls at issue – unlike the calls here – did not promote or advertise a company that sells a service. 2:15-cv-0054-RFB-PAL, 2017 U.S. Dist. LEXIS 176709, at *7 (D. Nev. Oct. 24, 2017) ("Hello This Is Adreima calling on behalf of [Practice Name] Our records Indicate (Patient First I Last Name] had a recent visit to our facility please return our call to the toll free number (PRACTICE PHONE] our hours of operation are Monday through Friday between 6 AM and 3 PM Pacific time We look forward to hearing from you. Thank you."). Similarly, in *Dennis v. Amerigroup Wash., Inc.*, the calls were about a health screening and "about a new member ID card necessary to pick up prescription drugs at the pharmacy." No. 3:19-cv-05165-RBL, 2020 U.S. Dist. LEXIS 22832, at *5-6 (W.D. Wash. Feb. 10, 2020).

Ultimately, the issue is very simple. AES sent robocalls that explicitly discussed the quality of Allsup, LLC's SSDI services (for which beneficiaries are charged a 25% fee of their benefits). There is no argument or fact that AES can raise to avoid the plain language of its robocalls. This Court should therefore hold that AES's calls are advertisements for which it was required to secure express written consent from Plaintiff and the Class members (which it has conceded it failed to do).

      C. **AES was Also Engaged in Telemarketing**.

While the content of AES's calls controls whether they are "advertisements," their ***purpose*** controls whether they were "telemarketing." *See* 47 C.F.R. § 64.1200(f)(13) ("The term ***telemarketing*** means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.") (emphasis original). Accordingly, Plaintiff's testimony (which, as discussed above, AES mischaracterizes and is not dispositive) as to what Plaintiff recalls and whether she has ever been offered any type of service, is irrelevant. The question is whether the

4

purpose of AES's robocalls was in part to encourage the purchase, rental, or investment in *any* company's services. *See Panacci v. A1 Solar Power, Inc.*, No. 15-cv-0532-JCS, 2015 U.S. Dist. LEXIS 77294, 2015 WL 3750112, at *5-6 (N.D. Cal. June 15, 2015) (holding that telemarketing includes calls about any company's services because the TCPA defines telephone solicitations as "*any* call 'for the purpose of encouraging [a] purchase,'") (citations omitted) (emphasis supplied).

Moreover, the caller's characterizations regarding the purpose of the calls are not material. *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order*, 18 FCC Rcd. 14014, 14095 ¶141, 2003 WL 21517853 (F.C.C. July 3, 2003)); *Bennett v. GoDaddy.com LLC*, Civ. No. 16-03908, 2019 U.S. Dist. LEXIS 59766, 2019 WL 1552911, at *8 (D. Ariz. Apr. 8, 2019) ("The relevant question is Defendant's *purpose* in initiating the calls, not what *occurred* on each call."). And a direct sale need not occur in the call: "It's possible for an ad to promote a product or service that's for sale without being so overt, as in the free-seminar example. The best ads sometimes do just that." *Sandusky*, 788 F.3d at 225 (citations omitted).

After finally conceding that the purpose of the calls controls the telemarketing inquiry, AES again cites Plaintiff's testimony and discovery responses to support its argument that the purpose of its calls was not promote anything. Resp. at 11. But citation to Plaintiff's testimony on the issue is nonsensical as Plaintiff has no way of knowing AES's internal motivations for the millions of robocalls its placed.

Further, AES contends that "AES's messages do not 'use the Allsup, LLC name,' as plaintiff claims." *Id*. But, the opposite has been established by the content of the calls themselves and, tellingly, AES cites nothing to support this argument. Next, AES argues that Plaintiff's dual purpose arguments are "nonsensical" and that there is no evidence of AES ever referring a beneficiary. Again, this is false, and the evidence shows that (1) [REDACTED] ¶¶60, 61; (2) [REDACTED]; and (3) [REDACTED]. SOF ¶82.

AES also misquotes *Daniel v. Five Stars Loyalty, Inc.*, No. 15-cv-03546-WHO, 2015 U.S. Dist. LEXIS 159007 (N.D. Cal. Nov. 24, 2015), suggesting that a rule exists allowing a company

5

a free pass if the marketing component of a call is "brief". Resp. at 12. However, AES omits from its discussion of that case that the content of the text message at issue mentioned "free pts" as "a basic consequence of Daniel replying with his email or of registering for and/or participating in the Five Stars program." *Five Stars*, 2015 U.S. Dist. LEXIS 159007, at *16. In other words, the text messages at issue were not advertising or telemarketing, they were about completing a registration process that the plaintiff had initiated.

As its seventh point, AES claims that Plaintiff fails to prove that all of its messages made explicit reference to Allsup, LLC. First, that is incorrect. The undisputed facts are that almost every message AES sent to Plaintiff and the Class members promoted Allsup, LLC and its 30 years of experience in assisting beneficiaries with their SSDI benefits. SOF ¶¶57, 83-85. . SOF ¶80. Second, AES's argument on this point again reflects a misunderstanding of the difference between advertising and telemarketing under the TCPA. Whether the calls mentioned Allsup, LLC is not relevant to the issue of whether they were telemarketing because Plaintiff has established that at least one of the purposes of the calls was to market Allsup, LLC and its affiliates. *See* SOF ¶¶60, 61 (

Ultimately, AES cannot meet its burden to show that a jury could find by a preponderance of the evidence that it was not engaged in marketing Allsup, LLC and its affiliates. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At best for AES, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255. Accordingly, if this Court is not inclined to rule in favor of Plaintiff on the issue of telemarketing, it should allow a jury to weigh the evidence and AES's and its employees' testimony.

D.  **Plaintiff and the Class Members Have Standing by Virtue of Receiving More Than One Prerecorded Voice Call**.

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
██████████████████████████████████████████████. SOF ¶20. █████
███████████████████████████████████████████████████████████████
███. *See* SOF ¶80 (1.9 million calls were placed to 353,344 unique telephone numbers). ███
████████████████████████████████████████████████████████. SOF ¶33.

In *Cordoba v. DIRECTV, LLC*, the Eleventh Circuit held that the "receipt of ***more than one*** unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1270 (11th Cir. 2019) (emphasis supplied); *see also Duverger v. Rsch. Strategies, Inc.*, No. 21-CV-62465-RAR, 2022 U.S. Dist. LEXIS 57529, at *2 (S.D. Fla. Mar. 29, 2022) ("the "recei[pt of] an unsolicited phone call resulting in a pre-recorded voicemail message to [a] cell phone" "sufficiently alleges an injury in fact sufficient to confer Article III standing.") (Ruiz, J.). In other words, Eleventh Circuit precedent holds that under the facts of this case (receipt of multiple prerecorded message calls), Plaintiff and the Class members have Article III standing. This issue was subsequently affirmed by the Eleventh Circuit in *Glasser v. Hilton Grand Vacations Co., LLC*, which held that *Cordoba* "resolve[d] the point" concerning whether receipt of an unwanted phone call establishes Article III standing. *Glasser,* 2020 U.S. App. LEXIS 2481, at *4 (11th Cir. Jan. 27, 2020).

The "ringless" voicemail cases cited by AES, including an unpublished Eleventh Circuit decision, are inapposite as they did not address standing for the types of calls at issue here. In this case, AES did not utilize "ringless" voicemail technology, it placed calls using a predictive dialer that utilized prerecorded voice messages. Reply to OSF at ¶109. In sum, because Plaintiff and the Class members have standing pursuant to *Cordoba*, they are entitled to recover damages under the TCPA. *See TransUnion v. Ramirez*, 141 S. Ct. 2190, 2213 (2021) ("By contrast, the 1,853 class members (including Ramirez) whose credit reports were disseminated to third-party businesses during the class period suffered a concrete harm.")

Lastly, AES omits that it removed this matter from state court and represented to this Court that jurisdiction was appropriate. Now, AES uses standing as a sword and asks this Court to enter summary judgment in its favor. But if this Court agrees with AES's arguments, this Court should remand the case – not allow AES to use Article III standing as a litigation strategy. *See Avedyan v. CMR Constr. & Roofing, LLC*, No. 20-81362-CIV, 2020 U.S. Dist. LEXIS 221149, at *7 (S.D. Fla. Nov. 24, 2020) (Dimitrouleas, J.) (remanding improperly removed case because "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute.") (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)); *Perez v. Pinnacle Fin. Servs.*, No. 1:20-cv-24767-UU, 2021 U.S. Dist. LEXIS 11694 (S.D. Fla. Jan. 19, 2021) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.") (Ungaro, J.) (quoting 28 U.S.C. § 1447(c)); *Turizo v. Healthfund Sols., LLC*, No. 21-cv-60289, 2021 U.S. Dist. LEXIS 92775 (S.D. Fla. May 14, 2021) ("Where, as here, the Court lacks subject-matter jurisdiction over a case that has been removed from state court, the proper disposition is to remand.") (Altman, J.).

### E. AES is not Entitled to Immunity.

In *Campbell-Ewald Co. v. Gomez*, the Supreme Court rejected Defendant's argument. *See* 577 U.S. 153, 166 (2016) ("Do federal contractors share the Government's unqualified immunity from liability and litigation? We hold they do not….Campbell asserts 'derivative sovereign immunity,' Brief for Petitioner 35, but can offer no authority for the notion that private persons performing Government work acquire the Government's embracive immunity."); *see also Adkisson v. Jacobs Eng'g Grp.*, No. 3:13-CV-505- TAV-HBG, 2017 U.S. Dist. LEXIS 231967 (E.D. Tenn. Feb. 15, 2017) ("In *Campbell-Ewald*, the Supreme Court addressed a circumstance where the federal government enjoyed absolute immunity to the claims under the TCPA….The Court determined that Campbell-Ewald did not obtain derivative absolute immunity by virtue of his status as a government contractor….Rather, the Court found that the contractor may obtain qualified immunity as limited by the principles set forth in *Yearsley* and *Filarsky*.").

Pursuant to *Campbell-Ewald*, AES can only argue that is entitled to qualified immunity. However, "[q]ualified immunity may be overcome . . .if the defendant knew or should have known that his conduct violated a right 'clearly established' at the time of the episode in suit." *Campbell-*

8

*Ewald*, 577 U.S. at 167 (quoting *Filarsky v. Delia*, 566 U.S. 377, 394 (2012) (Ginsburg, J., concurring) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here, AES cannot "contend that the TCPA's requirements or the [SSA's] instructions failed to qualify as 'clearly established.'" *Campbell-Ewald*, 577 U.S. at 168. Indeed, the TCPA and its implementing regulations clearly establish that express written consent is required for telemarketing calls using prerecorded messages. ▇

▇ . SOF ¶¶24, 26, 28, 52, 74.

Even if AES were entitled to derivative immunity, "[w]hen a contractor violates both federal law and the Government's explicit instructions, . . . no 'derivative immunity' shields the contractor from suit by persons adversely affected by the violation." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 647 (4th Cir. 2018) (quoting *Campbell-Ewald*, 136 S. Ct. at 672) (citations omitted). In its 2016 Order, the FCC held that a government contractor is not entitled to any type of immunity when it fails to "act[] within the scope of its contractual relationship with the government[.]" *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 31 F.C.C. Rcd. 7394, 7398 (2016).

Here, AES violated the TCPA by placing marketing calls without the requisite express written consent. And AES repeatedly violated the SSA's explicit instructions and is therefore not entitled to any type of immunity. First, ▇

9



**WHEREFORE**, Plaintiff Annette Barnes respectfully requests the entry of an Order granting her Motion for Summary Judgment, and for such other relief as deem appropriate by the Court.

Date: June 29, 2022

Respectfully submitted,

| **IJH Law** | **HIRALDO P.A.** |
|---|---|
| /s/ *Ignacio J. Hiraldo* | /s/ *Manuel S. Hiraldo* |
| Ignacio J. Hiraldo, Esq. | Manuel S. Hiraldo |
| Florida Bar No. 0056031 | Florida Bar No. 030380 |
| 1200 Brickell Ave Suite 1950 | 401 E. Las Olas Boulevard Suite 1400 |
| Miami, FL 33131 | Ft. Lauderdale, Florida 33301 |
| Email: ijhiraldo@ijhlaw.com | Email: mhiraldo@hiraldolaw.com |
| Telephone: 786.496.4469 | Telephone: 954-400-4713 |
| *Counsel for Plaintiff* | *Counsel for Plaintiff* |