**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-21121-BLOOM/Otazo-Reyes**

ANNETTE BARNES, individually
and on behalf of all others similarly
situated,

    Plaintiff,

v.

ALLSUP EMPLOYMENT
SERVICES, LLC,

    Defendant.
_____/

## ORDER ON MOTION FOR CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon Plaintiff Annette Barnes' ("Plaintiff") Motion for Class Certification, ECF No. [49] ("Motion").[1] Defendant Allsup Employment Services, LLC ("Defendant" or "AES") filed a Response in Opposition, ECF No. [56] ("Response"),[2] to which Plaintiff filed a Reply, ECF No. [74] ("Reply"). Plaintiff also filed a Notice of Supplemental Authority, ECF No. [75], to which Defendant filed a Response, ECF No. [101]. The Court has carefully reviewed the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.   BACKGROUND**

On March 2, 2021, Plaintiff filed her Complaint against Defendant in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"). *See* ECF No. [1-2] ("Complaint").

---

[1] Plaintiff filed an unredacted version of her Motion under seal, ECF No. [48].
[2] Defendant filed an unredacted version of its Response under seal, ECF No. [57]. Defendant also filed a Notice of Filing of Corrected Exhibits. *See* ECF Nos. [59], [60].

According to the Complaint, Defendant transmitted calls using an artificial or prerecorded voice to the telephone numbers of Plaintiff and members of the putative classes in violation of the TCPA. *See id.* The Complaint alleges three counts on behalf of Plaintiff individually and on behalf of two putative classes: a violation of 47 U.S.C. § 227(b) brought on behalf of Plaintiff individually and on behalf of the "No Consent Class" ("Count I"); a violation of 47 C.F.R. § 64.1200 brought on behalf of Plaintiff individually and on behalf of the "No Consent Class" ("Count II"); and a violation of 47 U.S.C. § 227(b) brought on behalf of Plaintiff individually and on behalf of the "Do Not Call Registry Class" ("Count III").[3] *See id.* Defendant subsequently removed the case to this Court. *See* ECF No. [1].

On October March 14, 2022, Plaintiff filed the instant Motion seeking class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). ECF No. [48]. Plaintiff proposes the following class and subclass:

> **CLASS:** All persons who AES called from December 2020 to July 2021 using the OCX Platform and for which AES's call records reflect a disposition of "MESSAGE_PLAYED" and "ANSWERING_MACHINE".
>
> **SUBCLASS:** All persons whose cellular telephones AES called from December 2020 to July 2021 using the OCX Platform and for which AES's call records reflect a disposition of "MESSAGE_PLAYED" and "ANSWERING_MACHINE".

*Id.* at 6 (emphasis in original).

Defendant responds that Plaintiff's proposed class and subclass do not meet the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) because (1) individual fact questions predominate and are not subject to common proof; (2) Plaintiff is an atypical and inadequate class

---

[3] It appears that Count III may have contained a scrivener's error. Plaintiff may have intended to assert a claim for a violation of 47 U.S.C. § 227(c), as opposed to 47 U.S.C. § 227(b), on behalf of herself and the "Do No Call Registry Class." *See* ECF No. [1-2] ¶¶ 56, 58. However, the error is immaterial for the purposes of this Motion because Plaintiff appears to have abandoned the "Do Not Call Registry Class" and the dispositive issue of standing does not hinge on whether the claim is brought under 47 U.S.C. § 227(b) or 47 U.S.C. § 227(c). *See* ECF No. [48] at 6.

representative; and (3) Plaintiff's proposed class and subclass are not superior or manageable. *See generally* ECF No. [57]. Plaintiff replies that Defendant creates a host of nonexistent individualized issues in its Response and requests that the Court improperly make determinations on the merits of the case. *See generally* ECF No. [74].

## II.    LEGAL STANDARD

District courts have broad discretion in deciding whether to certify a class. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir. 1992). To certify a class action, the putative class must satisfy "the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharm., Inc.,* 621 F. App'x 945, 946 (11th Cir. 2015) (citing *Little v. T-Mobile USA, Inc.,* 691 F.3d 1302, 1304 (11th Cir. 2012)); *see also Fitzpatrick v. General Mills, Inc.,* 635 F.3d 1279, 1282 (11th Cir. 2011) ("[T]he putative class must meet each of the four requirements specified in [Rule] 23(a), as well as at least one of the three requirements set forth in [Rule] 23(b)."); *Rutstein v. Avis Rent-A-Car Sys., Inc.,* 211 F.3d 1228, 1233 (11th Cir. 2000) ("A class action may be maintained only when it satisfies all of the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." (quoting *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir. 1997)).

"Under Rule 23(a), every putative class first must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1265 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a); *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187-88 (11th Cir. 2003)) (internal quotation marks omitted). Next, under Rule 23(b)(3), class certification is appropriate if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The burden of establishing these requirements is on the plaintiff who seeks to certify the suit as a class action." *Heaven v. Trust Co. Bank,* 118 F.3d 735, 737 (11th Cir. 1997); *see also Rutstein*, 211 F.3d at 1233. The moving party "must affirmatively demonstrate his compliance" with the class certification requirements. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). That is, "a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a) [but also] satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (emphasis in original). "A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class." *Vega,* 564 F.3d at 1266 (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)).

## III. DISCUSSION

As noted above, Plaintiff seeks class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3). ECF No. [48]. Defendant responds that Plaintiff's proposed class and subclass do not meet the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) because (1) individual fact questions predominate and are not subject to common proof; (2) Plaintiff is an atypical and inadequate class representative; and (3) Plaintiff's proposed class and subclass are not superior or manageable. *See generally* ECF No. [57]. Plaintiff replies that Defendant creates a host of nonexistent

4

individualized issues in its Response and requests that the Court improperly make determinations on the merits of the case. *See generally* ECF No. [74].

The Court ordinarily addresses Rule 23(a) before addressing Rule 23(b)(3), *see Vega,* 564 F.3d at 1265 ("Under Rule 23(a), every putative class *first* must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation." (emphasis added)). However, here, Defendant argues that the requirements of Rule 23(b)(3) are not met because whether the putative class members have Article III standing is a predominating individual issue that is not subject to common proof. *See* ECF No. [57] at 28-31. Plaintiff replies that if Defendant's standing argument has any merit, then Plaintiff would not have standing either, and the Court should remand the instant case to state court. *See* ECF No. [74] at 10. As Plaintiff correctly notes, before certifying a class, "the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." *See* ECF No. [48] at 19-20 (citing *Rosenberg v. GEICO Gen. Ins. Co.*, No. 19-61422-CIV-CAN, 2021 U.S. Dist. LEXIS 210775, at *8 (S.D. Fla. Sep. 21, 2021) (quoting *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000)). As such, Defendant's Rule 23(b)(3) argument, specifically its argument with respect to standing, raises a threshold issue of whether the Court has jurisdiction to hear Plaintiff's case. Therefore, the Court begins by addressing the threshold issue of whether Plaintiff has standing and the related issue of whether determining the standing of putative class members is a predominating individual issue that forecloses class certification.

**A. Plaintiff's Standing**

Plaintiff argues in her Motion that she has Article III standing. *See* ECF No. [48] at 19-20. Plaintiff avers that it is undisputed that Plaintiff suffered an injury-in-fact that is traceable to Defendant's TCPA violations and that the TCPA authorizes statutory and treble damages for

violations. *See id.* at 20. Defendant does not directly respond to Plaintiff's argument with regard to Plaintiff's standing, but Defendant notes that standing under the TCPA requires an allegation that Defendant rendered Plaintiff's device "unavailable to receive legitimate calls or messages for [a] period of time." ECF No. [57] at 29 (quoting *Grigorian v. FCA US LLC*, 838 F. App'x 390, 391 (11th Cir. 2020)). Defendant further notes that Plaintiff testified that she is seeking to recover damages for only four (4) recorded voicemails and that she was not deprived of legitimate uses of her phone as a result of the voicemails. *See* ECF Nos. [57] at 20-21 (quoting ECF No. [57-1] at 64); *see also id.* at 30 (quoting ECF No. [57-1] at 53).

      The Court agrees with Plaintiff. For standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990). The Eleventh Circuit has held that in the context of a TCPA claim, the receipt of more than one call with a prerecorded message satisfies the requirements of Article III standing. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019) ("The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing."). The Eleventh Circuit further held in *Grigorian* that if a defendant used a "ringless" voicemail system, where the phone never rang and the message went directly to the plaintiff's voicemail, a plaintiff who received a single voicemail did not have standing. 838 F. App'x at 392. The Eleventh Circuit analogized a ringless voicemail to an unwanted text message, which did not amount to an injury-in-fact, because the ringless voicemail did not result in a material loss of time, render the device unavailable while the voicemail was

being deposited, cause the plaintiff to incur charges, or require the plaintiff's immediate attention in the same way a ringing phone does. *See id.* at 393.

Here, there are no allegations that Defendant used a ringless voicemail system. It is undisputed that Defendant's calls were not ringless, and Plaintiff could have answered the calls. ECF Nos. [48] at 11, [48-1] at 30-31. Because Plaintiff did not answer the calls, Defendant left voicemails on Plaintiff's account. ECF Nos. [48] at 11, [48-1] at 30-31. Nonetheless, the Eleventh Circuit's underlying reasoning with regard to standing in *Grigorian* is still instructive because the Eleventh Circuit did not restrict the standing analysis in *Grigorian* to cases involving ringless voicemail systems. As noted above, the Eleventh Circuit's standing analysis hinged on – not whether the defendant used a ringless voicemail system – but whether the calls resulted in a loss of time, rendered the device unavailable, caused the plaintiff to incur charges in the form of telephone minutes, and required the plaintiff's immediate attention. *See Grigorian*, 838 F. App'x at 393. In Plaintiff's case, the missed calls did not prevent Plaintiff from using her phone for legitimate purposes because (1) she was presumably not using her phone anyway given that she missed the calls or (2) she ignored the calls and used her phone for other legitimate purposes. *See* ECF No. [57-1] at 53 (Plaintiff testifying that the calls and voicemails did not prevent her from using her phone for other purposes). Further, Defendant did not cause Plaintiff to incur charges for the use of telephone minutes since Plaintiff never answered the calls. *See id.* (Plaintiff testifying that she was not charged by her telephone service provider for the unanswered calls or the voicemails). In addition, Defendant's calls did not cause Plaintiff to give them her immediate attention since she never answered the calls. Therefore, at first blush, the calls and resulting voicemails could each be considered a voicemail from a ringless voicemail system, which is not sufficient to establish standing. *See Grigorian*, 838 F. App'x at 392.

7

However, the Court notes that in *Grigorian*, the Eleventh Circuit was addressing whether a *single* voicemail established standing and specifically stated that "[t]his analysis may be different if a plaintiff alleges multiple ringless voicemails." *Id.* at 392 n.2. The Eleventh Circuit expressly noted that Eleventh Circuit case law "leaves unaddressed whether a plaintiff who alleged that he had received multiple unwanted and unsolicited text messages [and by implication, multiple voicemails] may have standing to sue under the TCPA." *Id.* In this case, Plaintiff asserts a claim for four (4) voicemails, not a single *de minimis* phone call and voicemail. *See* ECF No. [57-1] at 64. It is undisputed that Plaintiff listened to all of the voicemails, though she did not listen to some of them in their entirety. *See* ECF Nos. [57] at 17-18, [57-1] at 37-38. Plaintiff also testified that she got "stressed" and "aggravated" from Defendant's multiple calls and voicemails. ECF No. [57-1] at 52. As such, the Court determines that Defendant's multiple voicemails and Plaintiff's repeated losses of personal time from having to listen to multiple voicemails constitute an injury-in-fact. In reaching this result, the Court finds instructive the Eleventh Circuit holding in *Cordoba*, where the Eleventh Circuit expressly held that "[t]he receipt of *more than one* unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." 942 F.3d at 1270 (emphasis added). In sum, Eleventh Circuit precedent indicates that while one phone call is not enough to establish an injury-in-fact, *see Grigorian*, 838 F. App'x at 392 n.2, the receipt of more than one phone call is sufficient to establish an injury-in-fact, *see Cordoba*, 942 F.3d at 1270; *see also Toney v. Advantage Chrysler-Dodge-Jeep, Inc.*, No. 6:20-CV-182-WWB-EJK, 2021 WL 4896949, at *4 (M.D. Fla. July 27, 2021), *report and recommendation adopted*, No. 6:20-CV-182-WWB-EJK, 2021 WL 3910135 (M.D. Fla. Sept. 1, 2021) (interpreting *Cordoba* to require more than one unwanted phone call for an injury-in-fact).

Lastly, the phone calls are traceable to Defendant, and the TCPA authorizes damages for such an injury. *See* 47 U.S.C. § 227(b)(3)(B)-(C) (permitting the recovery of actual monetary loss or $500 for each violation, whichever is greater, and in the case of willful or knowing violation, treble damages). As such, the Court determines that Plaintiff does have Article III standing.[4,5]

### B. Putative Class Members' Standing

The Court next addresses whether determining the standing of putative class members is a predominating individualized issue that forecloses class certification. As noted above, Plaintiff seeks to represent a class of persons who received a call from Defendant and for whom Defendant's call records reflect a disposition of "MESSAGE_PLAYED" and "ANSWERING_MACHINE." ECF No. [48] at 6. Plaintiff also seeks to certify a subclass for cellphone users with the same disposition. *See id.* It is undisputed that in Defendant's call records, the disposition of "MESSAGE_PLAYED" AND "ANSWERING_MACHINE" reflects that Defendant delivered "the message to voicemail." ECF No. [57] at 21 (quoting ECF No. [48-4] at 147-48). It is also undisputed that Defendant left voicemails only when the recipients did not answer the calls. ECF Nos. [48] at 11, [48-1] at 30-31. Plaintiff argues that for individuals with such a disposition – namely, individuals who did not answer Defendant's call and who received Defendant's voicemail

---

[4] As noted above, Plaintiff avers in her Reply that if she does not have standing, then Defendant should not have removed this matter from state court and should not have represented to this Court that jurisdiction was appropriate. *See* ECF No. [74] at 10. The argument is moot given that Plaintiff does have standing.

[5] The Court notes that while Plaintiff prevails on this matter, Plaintiff cites several cases that do not advance her argument. *See* ECF No. [48] at 19-20. In *Perrong v. Total Ins. Brokers, LLC.*, No. 8:20-CV-1905-JSM-TGW, 2021 WL 3036467, at *3-4 (M.D. Fla. Apr. 2, 2021), the plaintiff had standing because the plaintiff's "telephone service provider charge[d] him for each call he receive[d]." In this case, there is no allegation that the telephone service provider charged Plaintiff for Defendant's calls or voicemails. In *Abramson v. Fed. Ins. Co.*, No. 8:19-CV-2523-T-60AAS, 2021 WL 268350, at *2 (M.D. Fla. Jan. 27, 2021), the plaintiff had standing because the plaintiff alleged that an unsolicited call temporarily deprived him of legitimate use of his phone. In this case, Plaintiff does not allege that the unsolicited call deprived Plaintiff of legitimate use of her phone. The Court further notes that none of the cases are relevant for the following discussion on whether determining the putative class members' standing is a predominating individualized issue since none of the putative class members answered Defendant's phone calls.

– common questions of law or fact predominate any individualized issues. *See* ECF No. [48] at 27-29.

Defendant responds that whether putative class members have standing is a predominating individual issue that forecloses class certification. *See* ECF No. [57] at 28-31 (citing *Grigorian*, 838 F. App'x at 391, and *Toney*, 2021 WL 4896949, at *5). Defendant submits that in this case, the Court must determine, with respect to all putative class members, "(i) whether their phone rang when AES called; (ii) if it rang, did the beneficiary hear it; (iii) did the beneficiary delete the voicemail before retrieving and listening to it; (iv) if they retrieved and listened to the voicemail, did they lose personal time doing so; and (v) even if they claim to have lost personal time, did the voicemail render their phones unavailable to receive other calls or messages for any period of time." ECF No. [57] at 30.

Plaintiff replies that Defendant's reliance on cases involving ringless voicemail systems – namely, *Grigorian* and *Toney* – is unavailing because this case does not involve a ringless voicemail system. *See* ECF No. [74] at 7-8. Plaintiff argues that Defendant's phone calls, which did ring, had the effect of depriving putative class members of legitimate uses of their phones, which is sufficient to establish an injury-in-fact for all putative class members and obviates the need for any individualized inquiry with respect to the standing. *See id.* at 8. Plaintiff further argues that the Eleventh Circuit resolved the issue of standing by holding that "an unwanted telemarking call" was sufficient to establish standing. *Id.* at 9 (citing *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2510 (2021)). Next, Plaintiff avers that the Court need not resolve the issue of standing for putative class members at the class certification stage. *See id.* (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 n.4 (2021)).

10

Plaintiff effectively submits that the Court can address class member standing after the jury verdict, rather than at the class certification stage. *See id.*

The Court agrees with Defendant. The Court reiterates that while *Grigorian* established that a *single* voicemail from a ringless voicemail system did not establish standing, the Eleventh Circuit left open the possibility that multiple voicemails could result in standing. *See Grigorian*, 838 F. App'x at 392 n.2. Further, *Cordoba* established that "[t]he receipt of *more than one* unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." 942 F.3d at 1270 (emphasis added); *see also Toney*, 2021 WL 4896949, at *4 (interpreting *Cordoba* to require more than one unwanted phone call for an injury-in-fact). As discussed above, Plaintiff received multiple calls that she did not answer, which resulted in repeated losses of personal time. The repeated losses of time established an injury-in-fact for Plaintiff. However, as Defendant correctly points out, whether other putative class members received multiple phone calls or one phone call is unclear and will require an individualized inquiry. One unanswered phone call that resulted in a voicemail would be insufficient to establish an injury-in-fact, but multiple unanswered phone calls resulting in multiple voicemails would be sufficient to establish an injury-in-fact.

Further, for individuals included in the putative class or subclass because they did not answer one call and received one voicemail – who would ordinarily not have standing because they only received one voicemail – would have standing if they answered at least two separate calls from Defendant because two or more answered calls are sufficient to establish standing. *Cordoba*, 942 F.3d at 1270. In other words, even after identifying class members who received one voicemail from one unanswered phone call and who ordinarily do not have standing, the Court would then have to ascertain whether those class members answered two or more separate calls

from Defendant because those class members would have standing by virtue of the answered calls. Such individualized inquiries predominate any common question.

Plaintiff's arguments to the contrary are unavailing. First, although Plaintiff argues that *Grigorian* and *Toney* are inapposite because the cases involved a ringless voicemail system that did not deprive recipients of legitimate uses of their phones, the Court is not persuaded for the reasons stated above. To reiterate, an unanswered phone call that resulted in a voicemail has the same effect as a ringless voicemail because neither event deprives recipients of legitimate uses of their phones. In this case, the unanswered calls did not render the putative class members' phones unavailable since the class members were not using the phone or ignored the call and used the phone for other purposes. As such, the putative class members were not all deprived of legitimate uses of their phones by the voicemails, and they do not all have standing simply because a voicemail was left on their phones.

Second, while Plaintiff relies on *Glasser*, 948 F.3d at 1306, to argue that "an unwanted telemarking call" is sufficient to establish standing, Plaintiff belies the holding of *Glasser* by using the article "an" and thereby implying one call is sufficient to establish standing. ECF No. [74] at 9. In *Glasser*, the Eleventh Circuit held that "[t]he receipt of *more than one* unwanted telemarketing call . . . is a concrete injury that meets the minimum requirements of Article III standing." 948 F.3d at 1306 (emphasis added). The holding in *Glasser* is applicable only to cases involving "more than one" phone call, not a singular phone call. As such, *Glasser* does not preclude this Court from having to consider whether each putative class member received one phone call or more than one phone call. Moreover, as noted above, *Toney*, 2021 WL 4896949, at *4, makes clear that according to Eleventh Circuit precedent more than one phone call is necessary to establish an injury-in-fact. While Plaintiff has standing because she lost personal time listening

to multiple voicemails, the Court must determine whether each individual class member actually listened to the multiple voicemails and lost personal time as a result.[6]

Third, Plaintiff argues that the Court need not decide the issue of standing for class members at the class certification stage. *See* ECF No. [74] at 9. In support, Plaintiff submits that in *Ramirez*, 141 S. Ct. at 2208 n.4, the Supreme Court did not require courts to resolve the issue of class member standing before class certification. However, the Court notes that the Supreme Court expressly stated that it was not addressing "the distinct question whether every class member must demonstrate standing before a court certifies a class." *See id.* Therefore, *Ramirez* does not meaningfully advance Plaintiff's argument that the Court need not consider whether every class member has standing before certifying a class since the Supreme Court stated that it was not deciding the issue one way or the other. Moreover, the Court is not determining standing for each class member at this stage. The Court is instead examining whether determining standing for putative class members will be a predominating individual issue. The Eleventh Circuit has spoken on this precise distinction in *Cordoba*, 942 F.3d at 1276-77. In *Cordoba*, the Eleventh Circuit held as follows:

> We do not hold today that a court is required to ensure that the class definition does not include <u>any</u> individuals who do not have standing before certifying a class

---

[6] The Court further notes that in a nonbinding case, *Abramson v. Fed. Ins. Co.*, No. 8:19-CV-2523-T-60AAS, 2021 WL 268350, at *2 (M.D. Fla. Jan. 27, 2021), the court held that one call was sufficient to establish standing. In light of Eleventh Circuit cases discussed above – namely, *Cordoba*, 942 F.3d at 1270, and *Glasser*, 948 F.3d at 1306 – the Court declines to follow the analysis set forth by the *Abramson* court. The Court also notes that in *Duverger v. Rsch. Strategies, Inc.*, No. 21-CV-62465-RAR, 2022 U.S. Dist. LEXIS 57529, *2 (S.D. Fla. Mar. 29, 2022), the court determined that one unwanted phone call was sufficient to establish standing. However, the relatively short opinion noted that *Grigorian* was distinguishable from *Duverger* because the plaintiff in *Duverger* could show that her phone was unavailable for other uses because of the phone call. *See id.* As such, one unwanted phone call was sufficient in *Duverger* because it deprived the plaintiff the use of her phone. As noted above, in this case, Plaintiff has testified that her phone was available for other uses despite the unwanted phone calls. *See* ECF No. [57-1] at 53. All of the putative class members also did not answer Defendant's phone calls and received voicemails, meaning their phones were not being used or were being used despite Defendant's phone calls. Thus, the putative class members were not deprived of the use of their phones, and they do not automatically have standing by virtue of a single unwanted phone call.

13

> . . . . Rather, *we only hold that in this case the district court must consider under Rule 23(b)(3) before certification whether the individualized issue of standing will predominate over the common issues in the case*, when it appears that a large portion of the class does not have standing, as it seems at first blush here, and making that determination for these members of the class will require individualized inquiries.

942 F.3d at 1276-77 (italics added; underline in original). As emphasized, while the Court need not determine standing at this stage, it must determine whether the issue of standing for putative class members will require individualized inquiries that predominate over the common issues in this case.

Fourth, the Court notes that Plaintiff filed supplemental authority that purportedly addresses the issue of standing. *See* ECF No. [75] (citing *Garey v. James S. Farrin, P.C.*, 35 F.4th 917 (4th Cir. 2022)); *see also* ECF No. [75-1]. Defendant responds that the case is inapposite as it does not address whether putative class members have Article III standing, relies on a nonbinding case from outside the Eleventh Circuit, and does not disturb the Eleventh Circuit's case law that establishes that a voicemail from a ringless voicemail system or an unanswered phone call does not establish standing. *See* ECF No. [101]. The Court agrees with Defendant. *Garey* does not establish why the issue of standing for putative class members will not predominate the common questions. Further, even if it did, the case is nonbinding, and the Court declines to follow a nonbinding case in light of binding Eleventh Circuit precedent discussed above.

Accordingly, Plaintiff has failed to meet her burden of satisfying the requirements of Rule 23(b)(3). Plaintiff does not seek class certification under Rule 23(b)(1) or (2). Therefore, class certification is not warranted and the Court need not proceed further. *See Karhu,* 621 F. App'x at 946 (requiring the plaintiff to satisfy the requirements of Rule 23(b)(1), (2), or (3) for class certification).

### C. Request for Hearing

As a final matter, Plaintiff requests a hearing. *See* ECF No. [48] at 32. Given the Court's analysis above, the Court does not find a hearing to be necessary to address the issues presented. As such, the Court denies Plaintiff's request for a hearing.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification, **ECF No. [49]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 1, 2022.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record